SUNRAY PACKING CO. v. WILSON et al.

No. 35616.

Supreme Court of Oklahoma.

March 23, 1954.

Hughey Baker, Tulsa, for plaintiff in error.

Gable, Gotwals & Hays, Tulsa, for defendants in error.

ARNOLD, Justice.

William W. Wilson and Larry Reiniger, co-partners, doing business as The Empire

Packing Company, brought this action for damages for breach of contract against Sunray Packing Company and Stockyards Packing Company in the District Court of Tulsa County.

The lease contract sued upon, dated January 2, 1950, which was attached to the petition sets forth that Sunray Packing Company is engaged in the business of processing beef, pork, and other meats, and is desirous of renting certain space to second parties, Empire Packing Company for a period of 1 year; that in consideration of the covenants and rentals therein set forth it rented and leased to Empire Packing Company certain described space in its building, and further provided that:

"It is understood and agreed that First Party (Sunray Packing Company) shall furnish to Second Party (Empire Packing Company) machinery, equipment, and facilities necessary to the operation of said second party * * *

"It is agreed and understood that all animals slaughtered by the second party shall be slaughtered on the premises herein leased and First Party hereby agrees to perform in a workmanlike manner all at its own cost, expense, and risk, the operation of slaughtering all such animals offered by Second Party up to the capacity of the plant and to also in a workmanlike manner dress and prepare these animals in the usual packinghouse manner for chilling and to in a workmanlike manner chill said animals * * *

"It is further agreed that the Second Party shall repair any part of said building damaged by the acts of Second Party, its servants, agents, employees or customers and shall also repair any equipment which is damaged during the life of this lease * * *"

In conformity with the allegations of their petition plaintiffs' evidence reasonably tends to show that defendant Sunray had breached this contract in that prior to signing the contract plaintiffs had told Sunray they would have to have a certain type of bacon slicer which would slice and package the bacon in shingle fashion and would have to have steam lard rendering equipment; that a bacon slicer was furnished in April which was unsatisfactory in that it did not slice and package the bacon in this fashion and plaintiffs had to return it; that no other bacon slicer was ever furnished resulting in loss of $1,827.86; that the steam lard rendering equipment was not ready for operation until July 28, 1950, resulting in loss of recovery of lard amounting to $909.20 plus extra labor of $394.12; that defendant furnished a bleeding rail but it was too short; that curing vats were furnished which would handle only about 20 hogs per week whereas plaintiffs processed about 70 hogs per week; that Stockyards Packing Company had a written agreement with Sunray whereby it did all of Sunray's killing; that the slaughtering done for plaintiffs was unworkmanlike in that the cattle and hogs were poorly split, skinned and chilled; that at times the hot carcasses were not chilled enough before delivery to plaintiffs, which would result in spoilage, and at other times the carcasses were frozen which resulted in deterioration and shrinkage of the meat; that the dehairing machine was out of line and broke a leg on one of every three hogs, rendering the ham unsaleable; that the average of legs broken should not be over 4 in one hundred; that some of the hogs were stuck in the shoulder, resulting in loss of the shoulder, and some were improperly split resulting in loss of the loin; that three vats of bacon spoiled due to improper chilling, a loss of $1,197.75; that actual loss due to damaged hams from broken legs was $1,100.12; loss due from unworkmanlike slaughtering, $1,340.08; that the refrigeration equipment was inadequate and broke down causing the expenditure of $125.56 on the equipment and $169.43 in repairs to the engine; that the refrigeration broke down entirely in August and plaintiffs were forced to give notice that the lease would be terminated; that plaintiffs had to dispose of their stock and equipment at a loss of $182.62.

Defendant's evidence reasonably tends to show that before signing the lease Sunray agreed to furnish steam lard rendering

equipment and a bacon slicer; that the steam rendering equipment could not be purchased but had to be made; that Sunray instructed the maker thereof to make it according to plaintiffs' specifications and send the bill to Sunray; that certain necessary parts were hard to get which accounted for the delay; that all the equipment was working when plaintiffs took it over; that Sunray spent over $3,000 for equipment trying to satisfy plaintiffs; that plaintiffs demanded the bleeding rail after the contract had been signed and Sunray furnished one; that the cattle and hogs were properly butchered; that the dehairing machine was a brand used and accepted by men in the business as satisfactory; that the slaughtering was done in a workmanlike manner; that the refrigeration system was adequate and the chilling was properly done; that the equipment furnished by Sunray was standard by the area.

At the close of all the evidence Stockyard's demurrer to the evidence and motion for directed verdict was granted over plaintiffs' objections. Sunray's demurrer to the evidence and motion for directed verdict were overruled. The jury returned a verdict in favor of plaintiffs in the amount of $2500 and judgment was entered on the verdict. Both plaintiffs and defendant Sunray filed motions for new trial, which were overruled. From order overruling such motions defendant Sunray appeals and plaintiffs cross appeal.

 Defendant Sunray, appellant here, contends that the court admitted parol testimony to vary the terms of the written contract between the parties which under the statutes and numerous cases cited is error. The contract provided that Sunray would furnish "machinery, equipment, and facilities necessary to the operation of said second party." What operations were contemplated by plaintiffs, what machinery, equipment, and facilities were necessary to carry on such operations, appear nowhere in the contract. It is obvious, therefore, that there is such a latent ambiguity in the contract as to require parol testimony to determine the meaning of the words used and the intention of the parties. The evidence admitted did not tend to vary the terms of the contract but merely to explain what was meant by their usage. In such cases it is proper to admit evidence showing the circumstances under which the contract was made in order to ascertain the intention of the parties. Daniel v. Pappas, 93 Okl. 165, 220 P. 355.

 Defendant next contends that the court erred in giving certain instructions which told the jury that a written contract may be modified by oral agreements and/or acts of the parties, and if it found that the written contract was so modified it should apply the terms of the contract as modified to determine whether there was or was not a breach thereof, and if it found the contract was not modified, it should apply the terms of the contract itself. Defendant says that the issue of modification of the terms of the contract was not in the case; that the parol testimony, which, it says, was incorrectly admissible, is the basis upon which such instructions were given. As above stated, the parol testimony was properly admitted to show the intention of the parties. There is also some evidence both on the part of plaintiff and defendant of subsequent modification of the original agreement, such as the furnishing of a bleeding rail, which was not agreed upon in the negotiations leading up to the written contract, certain cooking vessels, etc. But regardless of whether there was or was not error in the giving of such instructions, we cannot say as a matter of law that they were prejudicial to defendant's rights or that the verdict would have been different had the alleged error not occurred.

Defendant next contends that the court erred in refusing certain proper instructions. The instructions given by the court, taken as a whole, fairly submit the issues to the jury.

 Lastly, defendant says that the evidence is insufficient to support a verdict in favor of plaintiffs. Defendant admits that the verdict returned being a general one, it is impossible to determine on what items the verdict was returned. Even if it be granted that the evidence of plaintiffs

was insufficient on some items, there is ample evidence on other items to support the verdict returned.

Plaintiffs cite no authorities in support of their cross petition in error asking reversal of the order of the court sustaining demurrer to the evidence as to Stockyards Packing Company and state that they do not care to urge it. We therefore do not pass upon the question.

Affirmed.

CORN, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.