Louis I. ALTSHULER, Milton S. Altshuler, and Harry W. Morse, co-partners d/b/a Altshuler Genealogical Service, Plaintiffs in Error,

v.

Mrs. Pat MALLOY, Sr., (Lenore H. Malloy), Defendant in Error.

No. 40054.

Supreme Court of Oklahoma.

Oct. 29, 1963.

Rehearing Denied Dec. 20, 1963.

Application for Leave to File Second Petition for Rehearing Denied Jan. 7, 1964.

Farmer, Woolsey, Flippo & Bailey, Tulsa, for plaintiffs in error.

Pat Malloy, and Conner, Winters, Randolph & Ballaine and John S. Athens, Tulsa, for defendant in error.

BERRY, Justice.

The parties here will appear as below.

This is an action by plaintiffs, a co-partnership dba Altshuler Genealogical Service, against Mrs. Pat Malloy, Sr., (Lenore H. Malloy), defendant, for breach of contract and commission for disclosure of assets. Plaintiffs' amended petition alleged that the exchange of certain letters between the parties effectively created a written contract; that pursuant to the contract terms they performed services and furnished information to defendant disclosing an asset consisting of certain corporate utility bonds worth approximately $27,000.00, owned by defendant's deceased husband but not inventoried nor shown as a part of his estate and which, if not converted into stock of a successor company by an impending cut-off date, would be valueless; that based on the information furnished by them to defendant, she timely converted these bonds into stock, which, with accrued dividends, had a total value of $33,000.00, and that pursuant to the terms of the contract they were entitled to a ⅓ commission or $11,000.00 which defendant had refused to pay.

Defendant, after mesne motions and pleadings were disposed of by the trial court, filed her general denial to plaintiffs' amended petition.

The matter was tried to a jury who found for defendant. After their motion for new trial was overruled, plaintiffs lodged this appeal alleging error, inter alia, in the trial court's actions in giving Instruction No. 4 and its failure to give plaintiffs' requested Instructions Nos. 1–20. They present their allegations to this Court under three propositions, to-wit:

"Proposition I. Where in an exchange of a series of letters an agreement results by which one to whom

valuable assets of a long dormant estate are disclosed for an agreed commission of one-third of the assets it is error for the court to submit to the jury instructions that leave it to the jury to determine if there was a meeting of the minds or a contract, and error to refuse requested instructions to the effect that the correspondence constituted binding contract between the plaintiffs and defendant.

"Proposition II. Where an exchange of correspondence results in an agreement to pay a commission for disclosure of valuable assets of a long dormant estate it is error for the trial court to permit one of the parties to testify as to her understanding of the language of the contract when such understanding is directly contradictory to the express language of the contract.

"Proposition III. Where plaintiffs in an action for commission for disclosing assets of a long dormant estate prove that they disclosed the assets, and that but for their disclosure the assets consisting of bonds with a cutoff redemption date would have been valueless it is error for the court to refuse to instruct a verdict for the plaintiffs at the conclusion of the evidence and to refuse to grant a motion for a judgment notwithstanding the verdict."

To us the only issue here is whether or not the actions of the parties, initially, viewed in the broadest sense, meets the legal requirements attendant to the inception of a contract. Plaintiffs maintain that they transmitted an offer to perform services which was accepted by defendant, and upon their performance defendant refused to perform. Defendant denies the contract as interpreted by plaintiffs but admits a contract of different intent. The query then is, was there such a meeting of the minds as to the subject matter or substance of plaintiffs' offer so as to meet legal necessity?

15 O.S. § 155, provides:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

The initial writing here consists of a letter from plaintiffs to defendant. The pertinent parts are as follows:

"We have been working on a matter in which we believe that the estate of your late husband, Pat Malloy, who died on January 31, 1934, may be entitled to assets of approximately $30,-000.00. It is our understanding that you were executrix under his will and that the estate has now been closed.

*"For many years, we have been engaged in genealogical and research work primarily for the purpose of locating heirs to estates.* Our reputation is such that we have done investigation work of this type for many prominent law firms, attorneys, banks, administrators, judges, etc. * * *

"We should like to handle the matter for you on the following basis: *In consideration of services to be rendered and the disclosure of the assets, we are to receive an amount equal to one-third of what the estate recovers.* For example, if the amount the estate will recover is $30,000, and this is only an example, we should receive approximately $10,000 and the estate would receive approximately $20,000 free and clear.

"In the event the estate does not recover anything, then of course, it will be under no obligations whatsoever.

"We trust that the above terms meet with your approval and we should appreciate it very much if you would be kind enough to write us that you have received this letter and that the terms

are satisfactory to you as executrix under the will. * * *" (Emphasis ours.)

The decisive question presented for our determination is whether the above quoted letter is ambiguous. The trial court held that it was ambiguous and permitted the introduction of parol evidence by defendant as to the meaning of the terms employed to her, and the basis of her acceptance of the offer. Plaintiffs assert that the contract is plain and unambiguous and that the trial court erred in permitting defendant to testify as to her interpretation of the offer contained.

We held in Cloud v. Winn et al., Okl., 303 P.2d 305, Syllabus 1, that "Before there can be an agreement, there must be a meeting of the minds of parties on matter attempted to be agreed on and no contract can be said to have been created where their minds have not met on one and the same thing."

We have consistently held that where the meaning of an ambiguous written contract is in dispute, evidence of extrinsic facts are admissible, and construction of contract then becomes a mixed question of law and fact and should be submitted to a jury under proper instructions. Brogden v. Perryman, 176 Okl. 505, 56 P.2d 398; Swift v. McMurray, 133 Okl. 104, 271 P. 635; and Polk v. Bartlett, Okl., 365 P.2d 987.

In considering this transaction we must place ourselves as far as possible in the position of the parties when the contract was entered into and consider the instrument itself as drawn, its purposes and the circumstances surrounding the transaction, and, from a consideration of all the elements, determine upon what sense or meaning of the terms used their minds actually met. See Bay Petroleum Corp. v. May et al., Okl., 286 P.2d 269.

Herein defendant testified in substance that her deceased husband's family came from Ireland and first settled in Massachusetts; that his family had been wiped out in a tornado; that she had no knowledge of his ancestors and that she had, at various times, received offers through the mail to trace his genealogy. The record of her testimony is persuasive that she had known of the bonds in controversy for many years, that she had them in a safe in her basement and that she thought the offer contained in the above letter involved a claim of her husband's estate as an heir of some distant and unknown relative. Her reply to this letter was an acceptance of such an offer.

To our minds the ambiguity in the contract is occasioned by the parts which we have heretofore set out for emphasis. We are unable to agree with plaintiffs that this writing is clear and unambiguous by its terms. The sentence "We have been working on a matter in which we believe that the estate of your late husband, Pat Malloy, who died on January 31, 1934, may be entitled to assets of approximately $30,000" when read with the sentence "For many years, we have been engaged in genealogical and research work primarily for the purpose of locating heirs to estate" is easily susceptible of more than one interpretation. Under the facts and circumstances existing at the time, we believe that the inferences to defendant would be at great variance with the intent of plaintiffs.

We, therefore, hold that it was not error for the court to submit the matter to the jury. This disposes of Plaintiffs' Propositions I and II.

Plaintiffs aver in their Proposition III that the trial court erred in refusing to instruct a verdict for them and against defendant at the conclusion of the evidence, and its failure to grant a motion for judgment notwithstanding the verdict.

We held in Polk v. Bartlett, Okl., 365 P.2d 987:

"A motion for directed verdict or demurrer to the evidence should not be sustained unless there is an entire absence of proof tending to show a right to recover; and in passing on the same the trial court must consider as true all of the evidence favorable to the party

against whom motion or demurrer is directed, together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the movant."

The evidence adduced at the trial revealed that Pat Malloy, Sr., defendant's deceased husband, had purchased the bonds during the late 1920's while he was with the Department of Justice in Washington, D. C. with funds of his operating corporation, Malloy & Co.; that their value dropped during the depression to almost nothing; that they were carried on the Malloy & Co. books as an asset of the company; that defendant had been made aware of their existence by the company accountant soon after the death of her husband; that upon the curtailment of company operations in Arkansas the office was moved to Tulsa, Oklahoma and the company safe containing the bonds was moved to defendant's home in Tulsa. The evidence also revealed that many years later, the issuing company was reorganized and/or merged with other companies with the result that these bonds again achieved their original value plus accrued interest when converted and that a determined and concerted effort was put forth to locate all owners of outstanding bonds.

The evidence as to whether or not such efforts put forth to locate bond holders would in fact have resulted in timely notification to defendant was conflicting. However, in our view, there was ample testimony to support the jury's conclusion that such procedures as detailed by the various witnesses would have, in fact, resulted in locating defendant before the time for converting the bonds had expired.

■ It is not open to question that "In an action at law where a verdict has been returned and a judgment rendered upon such verdict, and the evidence is conflicting, and there is evidence reasonably tending to support the verdict, this Court will not weigh the evidence to determine where the preponderance thereof lies, and will not substitute its judgment for that of the jury."

■ We have examined the record in this case and conclude that the verdict of the jury is supported by competent evidence.

Affirmed.

BLACKBIRD, C. J., and JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.