No. 99-048

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 104

299 Mont. 291

P. 2d 980

IN RE THE MARRIAGE OF

CHERYL HOLLOWAY, a/k/a

CHERYL WOOLSEY,

Petitioner and Respondent,

and

DAVID W. HOLLOWAY,

Respondent and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John K. Kurtz, Jr.; Werner, Epstein & Johnson, Cut Bank, Montana

For Respondent:

Chris P. Christensen; Keil & Christensen, Conrad, Montana

_____

Submitted on Briefs: September 23, 1999

Decided: April 27, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1David W. Holloway (David) appeals from the judgment and order of the Ninth Judicial District Court, Glacier County, ordering that Cheryl Holloway (Cheryl), a/k/a Cheryl Woolsey, pay David one-half of the date-of-dissolution value of the family home and property (the house) upon its sale. We affirm in part and reverse and remand in part.

Issues

We restate the issues on appeal as follows:

¶2 1. Did the District Court properly construe Cheryl's petition as a request to interpret the Agreement?

¶3 2. Did the District Court correctly interpret the Agreement?

¶4 3. Did the District Court err in entering judgment because Cheryl's petition was procedurally barred?

Standard of Review

¶5 The construction and interpretation of written agreements is a question of law. *See*, *e.g.*, In re Estate of Hill (1997), 281 Mont. 142, 145, 931 P.2d 1320, 1323 (citations omitted).

Whether a portion of a written agreement is ambiguous is also a question of law. *See Estate of Hill*, 281 Mont. at 146, 931 P.2d at 1323. We review questions of law *de novo* to determine whether they are correct. *See* Bruner v. Yellowstone County (1995), 272 Mont. 261, 265, 900 P.2d 901, 903.

Factual and Procedural Background

¶6 We note at the outset that the District Court judgment contains a number of inaccuracies: The judgment assumes that the house was burdened with debt at the date of dissolution, but David and Cheryl owned it free of debt. The court listed the sales price for the house as $74,500, but the buy-sell agreement lists the price as $75,000. Finally, the court ordered that David "shall be paid one-half of the value of the real property as of January 8, 1994 . . . ," but the decree of dissolution is actually dated on January 5, 1994.

¶7 Cheryl filed a petition for dissolution and the parties' marriage was dissolved by court order on January 5, 1994. A property settlement agreement (the Agreement), executed by Cheryl and David, was incorporated into the decree of dissolution. The Agreement provided in relevant part:

> The parties own a house located at 945 U.S. 89 North in Glacier County, State of Montana. Wife shall receive the family home subject to the debt owed thereon. Wife agrees to maintain the house and property in at least the condition it is now, and when sold, she will return to Husband one-half the proceeds of the sale of the house.

¶8 In November 1997, Cheryl entered into a buy-sell agreement with respect to the house and subsequently filed a "Petition to Modify Property Settlement Agreement and Child Support Agreement[1]" in District Court. With regard to the property settlement, Cheryl's petition asserted that the Agreement failed to anticipate or address the division of proceeds from the sale of the house in light of Cheryl's substantial improvements to the house, which increased its value, as well as Cheryl's payment of all property taxes since the date of dissolution. Cheryl asked the court to allow her

> to retain, in addition to an amount equaling one-half (½) of the proceeds realized from the sale of the family real property in Glacier County, Montana, an amount equaling the total of the amount expended by Petitioner for improvements to, and taxes upon, said real property since January 5, 1994.

¶9 Following a hearing, the District Court concluded that the Agreement's failure to address what would happen to the expenditures of one party which were neither for maintenance nor repairs created a latent ambiguity and construed Cheryl's petition as a request to interpret the Agreement in light of that ambiguity. The court concluded that the Agreement contemplated that Cheryl would maintain the value of the house at the time of dissolution and divide that value when the house was sold. The court found that both parties benefitted from this arrangement: Cheryl would not be obligated to immediately pay David his share of the equity and would not have to pay rent or buy another home. David would benefit from a reduction of debt on the house, increasing the equity to be divided upon its sale. The court held that the property taxes were an item of maintenance of the house that Cheryl was responsible for pursuant to the Agreement.

¶10 The court found that the value of the house on January 5, 1994, the date of dissolution, was $55,500. Cheryl had entered into a buy-sell agreement for $75,000. Cheryl claimed $21,029.35 in expenditures for items other than maintenance and repair--$3,716.59 thereof constituted payments for property taxes. The court ordered that David be paid one-half of the value of the house as of January 8, 1994--$27,750, less one-half of the closing costs, real estate agent's commissions and expenses associated with the sale of the house.

## Discussion

¶11 1. Did the District Court properly construe Cheryl's petition as a request to interpret the Agreement?

¶12 Cheryl's petition stated that the Agreement "does not anticipate or address the issue of equitable division of the proceeds resulting from the sale of the family property, in light of Petitioner having provided, since January 5, 1994, substantial improvements to the property which materially increased the value of the real property . . . ." The District Court held that "[a]lthough Petitioner's request to the Court is styled as a petition to modify, the request in substance asks this Court to interpret the written contract between the parties in the face of the ambiguity concerning the division of the increase in value of the real property due to non-maintenance, non-repair expenditures."

¶13 Rule 8(e)(1), M.R.Civ.P., states in relevant part that "[n]o technical form of pleading or motion are required." This Court has held that it will "look to the substance of a motion, not just its title, to identify what motion has been presented." Miller v. Herbert (1995), 272 Mont. 132, 136, 900 P.2d 273, 275. Cheryl's petition gave sufficient notice to the court and David that Cheryl wanted the court to interpret the Agreement in light of the

improvements she had made to the house. David was not prejudiced by Cheryl's failure to use the term "interpret" with regard to the Agreement.

¶14 David's argument that Cheryl must have asked the court to modify the Agreement because she asked the court to modify the child support obligation in the same petition is not persuasive. Although Cheryl raised these issues in the same petition, they are separate matters. The hearing and the judgment on which this appeal is based only concern the Agreement. We do not agree with David that logic dictates that Cheryl must have wanted the Agreement modified if she wanted the child support obligation modified.

¶15 David further argues that the court erred in construing Cheryl's petition as a request to interpret the Agreement because she asked the court to compensate her for property taxes although she knew such payments constituted maintenance when she signed the Agreement. Even if Cheryl asked the court to modify the Agreement with respect to the property taxes, the issue is moot because the court did not modify the Agreement with respect to the property taxes, but found that "[r]eal property taxes are an item of expense necessary to maintain ownership of property."

¶16 The District Court correctly determined that "[t]he failure of the Settlement Agreement to address the division of value caused by expenditures of one party which are not for maintenance or repairs is a latent ambiguity in the agreement." Black's Law Dictionary defines "latent ambiguity" as "[a] defect which does not appear on the face of language used or an instrument being considered. It arises when language is clear and intelligible and suggests but a single meaning, but some extrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings." Black's Law Dictionary 80 (7th ed. 1999). David's contention that the Agreement's language is clear and unambiguous may be correct insofar as the Agreement itself is concerned, but fails to take into account the ambiguity that arose once Cheryl began making expenditures that were not for maintenance or repairs. Cheryl's improvements beyond maintenance and repairs introduced the necessity of interpreting the Agreement in light of them.

¶17 Finally, David argues that the District Court's interpretation of the Agreement introduced an additional provision to the Agreement that denied him his full contractual rights. David contends that he bargained for one-half of the proceeds and that "[o]ne-half is one-half, nothing more and nothing less." Because we hold that the District Court interpreted the Agreement in light of its latent ambiguity, the District Court did not

introduce an additional provision to the Agreement, but merely interpreted the Agreement to clarify what was meant by "one-half of the proceeds of the sale of the house" in the context of nonmaintenance expenditures.

¶18 2. Did the District Court correctly interpret the Agreement?

¶19 Upon finding that the Agreement contained a latent ambiguity, the District Court properly admitted parol evidence to interpret the Agreement. *See* Ellingson Agency, Inc. v. Baltrusch (1987), 228 Mont. 360, 366, 742 P.2d 1009, 1013 (citing § 28-3-301, MCA, which states: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."). The court found that a reasonable interpretation of the Agreement was that Cheryl and David had intended that Cheryl would maintain the date-of-dissolution value of the house and that they would divide that value upon the future sale of the house. The court premised its conclusion on the mistaken assumption that the house was burdened with debt and that David benefitted from this arrangement by the additional equity he would acquire upon sale of the house from the reduction of debt.

¶20 We are not persuaded by David's argument that he should receive one-half of the entire proceeds of the sale of the house. He argues that the Agreement's language that Cheryl would maintain the house in "at least the condition it is now" suggests that the parties contemplated that Cheryl might improve the house. We agree with Cheryl that this language served to protect David from dissipation of the value of the property while Cheryl was residing therein. The District Court's finding that "to permit [David] to share in the increase in value attributable to such expenditures [beyond maintenance and repairs] would permit [David] to have more benefit from the Agreement than the Agreement reasonably contemplates" is reasonable and supported by the record. We affirm that portion of the judgment allowing Cheryl to retain the proceeds from the sale of the house attributable to her expenditures for improvements beyond maintenance and repairs.

¶21 It is undisputed that Cheryl and David owned the house debt-free at the time of dissolution. In light of the District Court's mistaken assumption that the house was burdened with debt, the court's interpretation of the Agreement as freezing values as of the date of dissolution was not reasonable because thereunder David did not benefit from the Agreement at all. It is not reasonable to assume that David would have preferred that Cheryl hold half of the date-of-dissolution value of the property for several years rather than receive the same amount at the time of dissolution. A reasonable interpretation of the

Agreement would reimburse Cheryl for the improvements she made beyond maintenance and repairs, but allow David to receive one half of the additional appreciation of the house since the date of dissolution. In sum, after deducting Cheryl's expenditures for items other than maintenance and repairs, totaling $17,312.76, from the sales price, David should receive one-half of that amount, minus one-half of the closing costs, real estate agent's commissions and expenses associated with the sale of the house.

¶22 3. Did the District Court err in entering judgment because Cheryl's petition was procedurally barred?

¶23 Our holding that the District Court properly construed Cheryl's petition as a request to interpret the Agreement is dispositive of this issue. The procedural bars David raises pursuant to § 40-4-208, MCA, and Rule 60(b), M.R.Civ.P., do not apply, because the court did not modify or amend the Agreement; it merely interpreted the latent ambiguity in the Agreement. Cheryl's petition did not seek relief from judgment, but asked the court to interpret the Agreement in light of a latent ambiguity. We have previously held that " '[t] he interpretation or clarification of an ambiguous judgment does not involve amendment thereof, so that even though power to modify is lacking, a court may construe and clarify a decree disposing of property, or enforce it.' " Kottas v. Kottas (1974), 164 Mont. 30, 33, 518 P.2d 1404, 1405 (citing 27B C.J.S. *Divorce* § 300(4)a). Based on our holding that the District Court did not modify the Agreement, we do not address David's contention that the District Court did not allow him to object to Cheryl's failure to follow procedural requirements for modification. Cheryl's request was not procedurally barred, and the District Court properly assumed jurisdiction over the matter.

¶24 Affirmed in part, reversed in part and remanded to the District Court for further proceedings consistent with this Opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JOHN W. LARSON

District Judge, sitting for Justice James C. Nelson

/S/ JAMES E. PURCELL

District Judge, sitting for Justice William E. Hunt, Sr.

_____

The Honorable James E. Purcell, Judge of the

District Court, sitting for Justice William E. Hunt, Sr.

1. The child support agreement is not at issue in this appeal.