2003 OK CIV APP 86

Keith Gene RYAN, Plaintiff/Appellee,

v.

Nancy Karen RYAN, now Hinch,
Defendant/Appellant.

No. 97,756.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Sept. 16, 2003.

R. Wayne Patterson, Tulsa, OK, for Plaintiff/Appellee.

Thomas M. Askew, John L. Randolph, Jr., Pray, Walker, Jackman, Williamson & Marlar, Tulsa, OK, for Defendant/Appellant.

Opinion by KEITH RAPP, Judge:

¶1 The trial court defendant, Nancy Karen Ryan, now Hinch (Hinch), appeals an order overruling her motion for new trial following the trial court's decision in favor of the trial court plaintiff, Keith Gene Ryan (Ryan), to terminate alimony following her remarriage.

## BACKGROUND

¶2 The parties were divorced in 1996. The decree resulted from a settlement agreement, although a separate agreement is not in the record. The decree provides that Hinch would receive the residence "subject to the mortgage indebtedness thereon." The decree's specific provisions for payment of the parties' debts do not assign responsibility for payment of the mortgage indebtedness.[1] The Decree further provides that Ryan will pay to Hinch a sum equal to the mortgage payment and specified the sum as support alimony.[2] The wording of the Decree is:

> THE COURT FURTHER FINDS that Plaintiff shall pay taxable support alimony to Defendant in the total sum of

---

1. Decree, Record p. 11 at 16–19, ¶¶ 10, 13–14.

2. *Id.*, Record p. 11 at 17, ¶ 11.

$308,428.00, payable in a monthly amount equal to the current mortgage payment at 9203 South Erie of $929.00 per month. In the event of sale of the house before the mortgage is paid in full, or in the event of the destruction of the house due to casualty, the Plaintiff agrees to make continuing support payments of $929.00 per month up to the amount equal to the current balance on the amortization schedule of the mortgage when the event occurs, as if the sale or destruction had not occurred.... Such payments shall be deemed support alimony and treated as such for income tax purposes by both Plaintiff and Defendant in the year(s) of payment. Support alimony in all circumstances will cease upon the earlier of repayment of the mortgage or upon the death of the Defendant.

¶ 3 Subsequently, Hinch decided to remarry and did so. Ryan then ceased further payments of the support alimony asserting that her remarriage statutorily terminated the obligation. 43 O.S.2001, § 134(B). Hinch cited Ryan for contempt and Ryan moved to terminate the obligation.

¶ 4 Hinch asserted that the parties did not intend to terminate the payments upon remarriage because they desired that their child be able to remain in the residence. Thus, the absence of any specific provision concerning marriage is consistent with that intent. Alternatively, Hinch argued that the Decree is ambiguous because of the absence of the provision and that construing it with the aid of additional evidence establishes her position.[3]

¶ 5 Ryan argued that the Decree had to specifically exempt remarriage, failing to do so, the statute operated to terminate the obligation. Alternatively, Ryan argued that construction of an ambiguous Decree was limited to a review of the judgment roll and this review did not support Hinch's argument.

---

3. Hinch made no effort to claim that some support was still needed and that it would be inequitable to terminate the payments. Also, Hinch has not attempted to assert some basis to set aside or modify or reform the decree to include some provision inadvertently omitted. The former may be time-barred. *See Dickason v. Dicka-*

¶ 6 The trial court ruled in favor of Ryan and overruled Hinch's motion for new trial. Hinch appeals.

## STANDARD OF REVIEW

¶ 7 As a general rule, a motion for new trial is addressed to the trial court's sound discretion and, absent error as to a pure and unmixed question of law, or arbitrary and capricious action, every presumption should be indulged in favor of the trial court's ruling on appeal. *Bennett v. Hall,* 1967 OK 122, ¶ 5, 431 P.2d 339, 340–41.

¶ 8 The underlying dispute involved construction of the statute pertaining to termination of support alimony and of the Decree and thus a question of law. Whether there is existence of ambiguity contained in the language of the decree is a decision made by the trial court. *See Mercury Inv. Co. v. F.W. Woolworth Co.,* 1985 OK 38, 706 P.2d 523. If the court determines that the language is not ambiguous, the construction of the decree is also a matter of law for the court. *See Ferrell Constr. Co., Inc. v. Russell Creek Coal Co.,* 1982 OK 24, 645 P.2d 1005. The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

¶ 9 The statute makes a divorce-related award of support alimony terminate by force of law on the contingencies of death or remarriage of the party recipient.[4] 43 O.S.

---

*son,* 1980 OK 24, ¶ 6, 607 P.2d 674, 676–77; *Key v. Key,* 1963 OK 288, 388 P.2d 505 syl. 1.

4. The statute construed in *Dickason* was then codified in Title 12, but has not changed in pertinent parts under Title 43. The statute, in effect when the divorce was entered in 1996 and now, provides:

2001, § 134(B); *Dickason,* 1980 OK 24 at ¶ 1, 607 P.2d at 675–76. Thus, when an unambiguous decree not subject to modification or correction is silent regarding these contingencies, then the occurrence of such contingencies terminates the support alimony award by force of law. *Dickason,* 1980 OK 24 at ¶¶ 1, 13, 607 P.2d at 675–76, 678.

■ ¶ 10 Moreover, parties to a divorce may agree to modify the application of the statute. However, such agreement must be expressly provided in the decree inasmuch as the parties' agreement is both subject to the applicable law and enforceable only when it has received the approval of the court. *Dickason,* 1980 OK 24 at ¶¶ 9–10, 607 P.2d at 677.

■ ¶ 11 However, if a decree suffers ambiguity, then the court may construe it but, in doing so, the court is limited to the judgment roll.

> Once a judgment has become final for want of an appeal or in consequence of an appellate court's decision, any controversy over the meaning and effect of that judgment must be resolved *by resorting solely to the face of the judgment roll.* The meaning of a judgment is to be divined from the terms expressed in its text, which is to be construed with the other parts of the judgment roll. Only if a judgment is ambiguous on the face of the record proper may the court *reach it for construction.* When called upon to so do, the court stands confined to an inspection of the judgment roll. It cannot extend its inquiry *dehors* the instruments that comprise the roll.

*Stork v. Stork,* 1995 OK 61, ¶ 15, 898 P.2d 732, 739.

B. The court shall also provide in the divorce decree that upon the death or remarriage of the recipient, the payments for support, if not already accrued, shall terminate. The court shall order the judgment for the payment of support to be terminated, and the lien released upon the presentation of proper proof of death of the recipient unless a proper claim is made for any amount of past-due support payments by an executor, administrator, or heir within ninety (90) days from the date of death of the recipient. Upon proper application the court shall order payment of support terminated and the lien discharged after remarriage of the

■ ¶ 12 A judgment roll consists solely of the decree and the pleadings, process, reports, verdicts, orders, judgments, and all material acts or proceedings of the trial court. *Timmons v. Royal Globe Ins. Co.,* 1985 OK 76, ¶ 7, 713 P.2d 589, 591 n. 5. The court's inquiry into a judgment's meaning cannot extend beyond the judgment roll and proceedings outside the record or not apparent on the face of the record may not be considered. *Id.* Thus, documents offered below by Hinch, such as letters and affidavits, may not be considered if the decree is subject to construction.[5]

¶ 13 The Ryan–Hinch decree is silent regarding the remarriage contingency and its affect on the alimony support obligation. However, examination of the entire decree discloses that the alimony support obligation is tied to the parties' mortgage indebtedness on the residence. *The decree makes no provision to assign responsibility, as between the parties, for payment of that debt.* The judgment roll does not, upon review, resolve any question regarding the absence of provision for payment of that debt or any question about the silence regarding the remarriage contingency. However, the parties are on notice of the provisions of the statutes.

■ ¶ 14 Thus, the decree, in its incorporation of the parties' agreement, suffers from a latent ambiguity concerning responsibility for payment of the mortgage debt *but not* concerning support alimony which terminates by force of law. A "latent ambiguity" is one not evident from the face of the instrument alone but becomes apparent when applying the instrument to the facts as they exist. *In re Estate of Kirk,* 127 Idaho 817, 907 P.2d 794, 800 (1995); *In re Marriage of Holloway,* 299 Mont. 291, 999 P.2d 980, 983 (2000); *see*

recipient, unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable, provided the recipient commences an action for such determination, within ninety (90) days of the date of such remarriage.

43  O.S.2001, § 134(B).

**5.** It does not appear that the trial court considered such materials in reaching its conclusion that the support alimony obligation terminated.

*In re Estate of Eversole,* 1994 OK 114, 885 P.2d 657, 662 n. 20. Black's Law Dictionary defines "latent ambiguity" as a defect which does not appear on the face of language used or an instrument being considered. It arises when language is clear and intelligible and suggests but a single meaning, but some extrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings. A patent ambiguity is one that clearly appears on the face of the document. Black's Law Dictionary, p. 80 (West Group 7th ed.1999). "Where a writing contains a reference to an object or thing, such as a pump, and it is shown by extrinsic evidence that there are two or more things or objects, such as pumps, to which it might properly apply, a latent ambiguity arises." *Williams v. Idaho Potato Starch Co.,* 73 Idaho 13, 245 P.2d 1045, 1048–49 (1952).

¶ 15 Here, a latent ambiguity arises when the facts at hand create an issue about responsibility for a common obligation, the mortgage debt. On the one hand it would appear that Hinch would be responsible to make the debt payments, with money supplied by Ryan in a form structured as support alimony. However, when the support alimony obligation ceases by force of law, then that extrinsic fact creates a necessity here for an interpretation or a choice between two or more possible meanings as to whether Ryan or Hinch is responsible for the mortgage payments, or some combination of responsibility results.

¶ 16 *If* the parties' relationship were simply contractual, the court could resort to parol evidence to assist in its resolution of the latent ambiguity. Where the meaning of an ambiguous contract is in dispute, evidence of extrinsic facts is admissible and construction of the contract becomes a mixed question of law and fact.[6] *Altshuler v. Malloy,* 1963 OK 243, 388 P.2d 1.

¶ 17 In other words, the court still construes the contract but now looks to parol evidence to assist it in the determination of what is meant by the contract wording and to ascertain the intent of the parties. *Sunray Packing Co. v. Wilson,* 1954 OK 90, ¶ 6, 268 P.2d 264, 267. In that event the court may admit for consideration by the trier of fact evidence showing the circumstances under which the contract was made in order to ascertain the intention of the parties. *Id.*

> While parol testimony cannot vary, modify or contradict the terms of the instrument, it is admissible to explain the meaning of words when there is a latent ambiguity in the written text of the agreement. Thus the practical construction of an agreement, as evidenced by the acts and conduct of the parties, is available only in the event of an ambiguity.

*Mercury Inv. Co.,* 1985 OK 38 at ¶ 9, 706 P.2d at 529.

¶ 18 The above discussion now identifies the dilemma faced by the trial court which was: A contract having latent ambiguity may be construed using parol and extrinsic evidence, but construction of a judgment is limited to the judgment roll. In the case of a contract to settle domestic issues, such as here, the contract under the teaching of *Dickason* is merged into the decree and the parties' rights are determined by resort to the decree. *Dickason,* 1980 OK 24 at ¶ 9, 607 P.2d at 677.

¶ 19 The solution to the problem follows from a close reading of *Dickason.* The parties' agreement is merged into the decree *"to the extent that its terms are embodied therein." Id.* Here, the parties' agreement, *if any,* regarding responsibility for payment of the mortgage debt obligation is *not* embodied in the decree when the source of money for the payment after divorce is, as here, in the form of support alimony.

---

6. In some jurisdictions parol evidence may not be admitted to determine the parties' intention in cases of patent ambiguity. Most jurisdictions dispense with the distinction and permit parol evidence regardless of whether the ambiguity is of the patent variety or latent variety. *Hokama v. Relinc Corp.,* 57 Haw. 470, 559 P.2d 279, 283 (1977); 29A Am.Jur.2d *Evidence,* § 1135 (1994). Oklahoma courts have followed the majority rule. *See Shuler v. Barnes,* 1990 OK CIV APP 37, 793 P.2d 301, where the instrument contained patent ambiguities and the Court deemed utilization of parol evidence proper.

¶ 20 The trial court's first task on remand is to ascertain whether such an agreement was made about mortgage payment responsibility. If an agreement was made, and if the terms thereof were inadvertently omitted from the decree, then the decree may be reformed to accurately reflect that agreement. *Dickason*, 1980 OK 24 at ¶ 6, 607 P.2d at 676–77. The trial court is not confined to the judgment roll in this determination to resolve the latent ambiguity.

¶ 21 If the trial court finds that the parties overlooked and thus omitted from their agreement a provision for responsibility for mortgage payments when support alimony ceased, then the trial court shall be governed by *Hickman v. Hickman*, 1997 OK 49, 937 P.2d 85.

> An unambiguous agreement dividing the property between the parties to a divorce cannot be modified without consent of both parties. *Stuart v. Stuart*, 555 P.2d 611, 615 (Okla.1976). However, when assets acquired during coverture are omitted from the court's decree providing for the division of property, even when the division of the property was reached by agreement of the parties, the property is owned by the party in which title was vested before the divorce. *Chapman v. Chapman*, 692 P.2d 1369, 1374 (Okla.1984). We see no reason to treat the debts of the parties any differently than the assets. When a debt is omitted from the divorce decree, then the liability for the debt remains unchanged.

*Hickman*, 1997 OK 49 at ¶ 9, 937 P.2d at 87–88.

## CONCLUSION

¶ 22 In summary, the support alimony terminated by force of law on remarriage. However, the termination results in a latent ambiguity contained in the decree involving a matter not included in the decree. Therefore, the matter is remanded to the trial court to determine whether the parties agreed as to responsibility for payment of the mortgage debt when support alimony ceased and whether such agreement was inadvertently omitted from the decree. If so, the trial court shall correct the decree to accurately reflect the agreement. If the parties made no agreement then the responsibility for the debt remains unchanged from its inception.

¶ 23 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, P.J., concurs, and REIF, J., dissents.

REIF, J., dissenting,

¶ 1 I do not find the support alimony provision to suffer from either patent or latent ambiguity, nor is it "silent as to the parties' intent vis-à-vis the law that applies to them [i.e., statutory termination of alimony]." *Dickason v. Dickason*, 1980 OK 24, ¶ 10, 607 P.2d 674, 677 (footnote omitted). The express language of the support alimony provision reflects that the parties considered and addressed in detail the circumstances under which termination would and would not occur. In specifying the circumstances for termination and non-termination, the parties reflected a clear intent that support alimony would terminate in those circumstances alone and no others. Significantly, they affirmatively chose one of the statutory grounds-death. By specifying and limiting the circumstances for termination, I believe the parties *expressly* exercised their power to modify applicable law by contract, and effectively excluded remarriage as a ground for termination, even though they did not specifically mention remarriage. *Id.* at ¶ 10, 607 P.2d at 677.

¶ 2 It is well settled that "mere ambiguity will not affect a judgment's validity, unless none of its terms is susceptible to construction which will make it conformable to law." *Jackson v. Jackson*, 2002 OK 25, ¶ 18, 45 P.3d 418, 428 (citation omitted). "An unclear judgment should be construed so as to carry out its evident purport and intent, rather than defeat it, and a court should consider the situation to which it was applied and the purpose sought to be accomplished." *Id.*

¶ 3 I would reverse the denial of Wife's motion for new trial and remand with directions to enforce the payment of support

alimony in accordance with the provisions in the decree.