2011 OK CIV APP 86

**Brian GALARZA, Petitioner/Appellant,**

v.

**Eunice Denise GALARZA, Respondent/Appellee.**

No. 107,820.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 13, 2011.

Rehearing Denied May 6, 2011.

Certiorari Denied June 27, 2011.

---

**5.** Neither Plaintiffs' petition in error nor brief in chief challenges the amount of costs awarded.

W. Franklin Muret, Stillwater, Oklahoma, for Petitioner/Appellant.

William J. Baker, Hert, Baker, Koemel & Ihrig, P.C., Stillwater, Oklahoma, for Respondent/Appellee.

JANE P. WISEMAN, Judge.

¶1 Plaintiff Brian Galarza (Husband) appeals from an order of the district court sustaining Defendant Eunice Denise Galarza's (Wife) "Motion to Enter Qualified Domestic Relations Order" (QDRO) and application for order nunc pro tunc. After review of the record and applicable law, we affirm the trial court's order.

## FACTS AND PROCEDURAL BACKGROUND

¶2 According to the docket sheet, Husband filed a petition for divorce in October 1998. The docket sheet reflects Wife did not answer the petition and on January 28, 1999, a divorce decree was filed. At the time the decree was filed, the parties had been married since 1984 and had three minor children. In its disposition of the parties' property, the trial court awarded Husband all of his military retirement.

¶3 Wife filed a motion to set aside the divorce decree which the trial court granted in an order filed March 4, 1999. In doing so, the trial court found "that [Wife] had actual notice of the divorce being filed and finds that service was good. [Wife] has ten days to file any other pleadings in answer and [Husband] has ten days to respond." In her answer to the petition for dissolution, Wife asked the trial court to dismiss the petition for lack of jurisdiction or, in the alternative, set the matter for hearing.

¶4 After a hearing, the trial court entered a divorce decree which was filed on August 5, 1999, in which it determined custody, visitation, child support, and division of the parties' property.[1] Relevant to the issues before us on appeal, the trial court in the agreed-to decree awarded Husband "the following assets free from any claim of [Wife]: military retirement subject to any portion [Wife] may be entitled to pursuant to military law, regulations, customs, or stipulations."

¶5 In March 2009, more than nine years later, Wife filed a motion to enter a QDRO in order to be awarded her portion of Husband's military retirement. Husband responded by filing an "Answer to [Wife's] Motion to Modify" objecting to Wife's entitlement to any portion of his military retirement.

¶6 In July 2009, Wife filed an application for order nunc pro tunc stating the following: "That the Decree of Divorce and Dissolution of Marriage filed August 5, 1999 incorrectly and through scrivener's error, did not contain language adequate to allow for division of the [Husband's] military retirement pay, and should be corrected."

¶7 After a hearing in September 2009 on Wife's motion to enter a QDRO and application for order nunc pro tunc, the trial court sustained both motions finding that the August 1999 decree should be corrected to read as follows:

"That [Wife] is awarded a percentage of [Husband's] disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is the number of months of marriage (178) during the [Husband's] creditable military service, and the denominator of which is [Husband's] total number of months of creditable military service, and further, the [Wife] should receive her proportionate share of all cost of living adjustments."

1. It appears from its docket sheet that the trial court approved the division of assets and liabilities as "per agreed decree" which Wife's counsel approved on her behalf. Although Husband states in his appellate brief that the language of this decree "does not ... establish that it was a consent [d]ecree," Husband also argues in his Petition in Error that "[t]he Court abused its discretion and erred in its ruling as it had the effect of rewriting a Consent Decree ... ten (10) years after the Decree was final rendering a settled Decree beyond terms agreed to by the Parties...."

The trial court's order memorializing its disposition of these motions was filed on November 9, 2009, and the trial court entered a QDRO on November 23, 2009, implementing this provision of the divorce decree.

¶ 8 Husband appeals.

## STANDARD OF REVIEW

¶ 9 We review *de novo* whether the trial court's order "was an extra-jurisdictional modification of a final property division in a divorce action." *Jackson v. Jackson,* 2002 OK 25, ¶ 2, 45 P.3d 418, 422.

¶ 10 "Whether there is existence of ambiguity contained in the language of the decree is a decision made by the trial court." *Ryan v. Ryan,* 2003 OK CIV APP 86, ¶ 8, 78 P.3d 961, 963. "If the court determines that the language is not ambiguous, the construction of the decree is also a matter of law for the court." *Id.*

¶ 11 Actions for divorce, alimony and division of property are matters of equitable cognizance. *Carpenter v. Carpenter,* 1983 OK 2, ¶ 24, 657 P.2d 646, 651. We will not disturb the trial court's order "absent an abuse of discretion, or a finding that the decision is clearly contrary to the weight of the evidence." *Watkins v. Watkins,* 2007 OK CIV APP 122, ¶ 4, 177 P.3d 1114, 1116.

## ANALYSIS

*1. Jurisdiction*

¶ 12 Husband contends the trial court had no jurisdiction to enter the November 2009 order granting Wife's motion to enter a QDRO and application for order nunc pro tunc because its order exceeded merely interpreting the 1999 divorce decree and actually modified a provision of the decree. Husband argues the vacation statutes, 12 O.S. 2001 §§ 1031 and 1031.1, apply and concludes that because the November 2009 order was entered more than 30 days after the 1999 decree, the trial court had no jurisdiction in this matter.

¶ 13 Conversely, Wife asserts these statutes do not apply because the trial court has jurisdiction to clarify previous orders dividing retirement benefits, citing *Jackson,* 2002

OK 25, 45 P.3d 418, and *Hodge v. Hodge,* 2008 OK CIV APP 96, 197 P.3d 511. We address Husband's second and third issues together in this section.

¶ 14 "The function of an order nunc pro tunc is to make the order speak the truth about what actually transpired." *Hodge,* 2008 OK CIV APP 96 at ¶ 14, 197 P.3d at 514.

> Nunc pro tunc relief is limited to supplying inadvertent clerical omission and correcting facial mistakes in recording judicial acts that actually took place. In short, a nunc pro tunc order can and will place of record what was actually decided by the court but was incorrectly recorded. The device may neither be invoked as a vehicle to review a judgment (or to excise legal errors found in it) nor as a means to enter a different judgment.

*Stork v. Stork,* 1995 OK 61, ¶ 7, 898 P.2d 732, 736–37 (emphasis and footnotes omitted).

¶ 15 "Absent a specific statutory exception a trial court may consider pension benefits accumulated during marriage as jointly acquired property subject to equitable division in a divorce." *Jackson,* 2002 OK 25 at ¶ 13, 45 P.3d at 426. "[T]his Court has consistently held that a final property division judgment is not subject to modification at a later date." *Id.* "An exception to the general rule has been recognized where the parties have entered into a settlement agreement (approved by a consent divorce decree) that expressly agrees to future modification of the agreed-to property division under certain specified circumstances." *Id.* at n. 13, 45 P.3d 418.

¶ 16 However, in regard to the trial court's jurisdiction to clarify a previous divorce decree dividing retirement benefits, the Supreme Court in *Jackson* found as follows:

> [A] QDRO is generally the mechanism by which a divorce decree awarding retirement benefits to a spouse is enforced and collected with regard to the particular retirement program covered by the decree.
>
> . . . .
>
> Although a trial court is without jurisdiction or authority to issue a QDRO that

substantively alters a final property division previously made in a divorce action, a trial court has jurisdiction or authority to issue a subsequent post-property division QDRO to act as the statutorily-sanctioned mechanism by which the System gains lawful empowerment to pay a former spouse their portion of a System benefit previously awarded as part of the final property division in the divorce action.

. . . .

[A] trial court has the authority to issue a subsequent QDRO if an initial one contains some ambiguity concerning the proper division of a retirement benefit under an earlier entered divorce decree, as long as the later QDRO does not alter what was awarded initially by the decree, but conforms to it.

*Id.* at ¶¶ 1, 15, 45 P.3d at 421, 426.

¶ 17 The first decree in January 1999 stated the following regarding Husband's military retirement:

10. [Husband] is awarded the following assets free from any claim of [Wife]:

*Asset*

Military Retirement;

Household Goods and Furnishings currently in his possession.

This decree was vacated and the August 1999 decree was subsequently entered stating:

14. [Husband] is awarded the following assets free from any claim of [Wife]:

household goods and furnishings currently in his possession

military retirement subject to any portion [Wife] may be entitled to pursuant to military law, regulations, customs, or stipulations.

The trial court found the language in the first decree to mean Wife would receive no portion of the military retirement pay and found the added language in the second decree to mean Wife would receive a portion of Husband's military retirement pay subject to military law. During the hearing on Wife's motions, the trial court concluded:

It is not a new request for a portion of military retirement. It's merely a request for clarification of paragraph 14 in the final

decree. And second, my ruling is that there is enough language in the second, final decree to permit a modification of that decree that will satisfy the military, specifically, with reference to the kind of modification that, as I understand it, was made in the *Hodge* case.

During the hearing on Wife's motion to settle journal entry, the trial court restated its findings:

I think the whole issue is whether that second decree, the one of August 5 of 1999, contains enough language to get [Wife] some of [Husband's] military retirement. And obviously, it does not. That decree does not have a percentage in it.

But my belief is that paragraph number 14, the paragraph in that newer decree, contains enough that the terms there are sufficient, that whatever remains to effect a QDRO may be added. That paragraph gives her something. It does not give her nothing.

. . . .

So there has to be an agreement that she's to be given something, and the issue is how much. *And I interpret the plain language of that portion of a paragraph to mean that she gets all she's entitled to, and what she's entitled to, the all to which she is entitled, is 50 percent of what accrued during their marriage per the formula.*

(Emphasis added). Thus, the trial court ordered the August 1999 decree to be corrected as follows:

"That [Wife] is awarded a percentage of [Husband's] disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is the number of months of marriage (178) during [Husband's] creditable military service, and the denominator of which is [Husband's] total number of months of creditable military service, and further, [Wife] should receive her proportionate share of all cost of living adjustments."

¶ 18 We see nothing in the trial court's order modifying or changing the military retirement provision contained in the August 1999 divorce decree. The order effectuates the parties' intent and enforces the terms of

paragraph 14 of the decree. *Mariano v. Mariano*, 2005 OK CIV APP 77, ¶ 9, 122 P.3d 493, 495 (finding a trial court's power to clarify a division of military retirement "can only be obtained to bring the terms of a qualified domestic relations order, the vehicle by which the division of military retirement benefits is enforced, into harmony with the provisions of the divorce decree"). The trial court properly clarified the decree pursuant to an order nunc pro tunc. We therefore find the trial court had jurisdiction to enter an order to effectuate the military retirement terms of the divorce decree.

### 2. Evidentiary Hearing

█ ¶ 19 Husband also argues that the trial court erred in denying him a "full evidentiary hearing" on Wife's application for an order nunc pro tunc. Although the trial court conducted a hearing, it denied Husband's request to present his own testimony and that of Wife's former attorney to discuss the parties' intent regarding division of the military retirement.[2]

¶ 20 The trial court stated during the hearing on Wife's motion to settle journal entry that it denied Husband's request to allow testimony during the hearing because he was making a ruling as a matter of law:

> I did not take, did not allow testimony that day, and I believe that it's correct ... that my statement disallowing testimony came from the belief that this was a matter of law. And I still believe that. My interpretation of law may not be correct, but it is my interpretation of the law and not fact dependent.

The trial court also stated during the hearing on Wife's application for nunc pro tunc relief: "I think inside *Hodge*, with the language in paragraph 14 as it is, *Hodge* allows that to be clarified to meet the requirements of the military. There is enough there that I believe the intent of the parties was clear. . . . And yet, per *Hodge*, it's not clear enough for the military."

¶ 21 Before ruling on Wife's nunc pro tunc application, the trial court held a hearing and considered argument from both sides. "The inherent power of a court, at any time after proper hearing, and so long as no intervening rights are affected, to cause its records to speak the truth and to enter an order nunc pro tunc accordingly has always been recognized in this jurisdiction." *Brougham v. Independent Potash & Chem. Co.*, 1948 OK 119, ¶ 5, 200 Okla. 659, 199 P.2d 211, 212. Because the trial court found the language in the August 1999 decree entitling Wife to a portion of Husband's military retirement to be clear and unambiguous, it did not err in refusing Husband's request to present testimony regarding the parties' intentions. Such testimony would have been permissible had the trial court found the language ambiguous. *Ryan*, 2003 OK CIV APP 86 at ¶ 17, 78 P.3d at 965 (finding that " 'the practical construction of an agreement, as evidenced by the acts and conduct of the parties, is available only in the event of an ambiguity' " (quoted citation omitted)). The trial court did not err in refusing Husband's request to present testimony regarding the parties' intent in dividing the military retirement benefits.

### CONCLUSION

¶ 22 The trial court's order sustaining Wife's "Motion to Enter Qualified Domestic Relations Order" and application for order nunc pro tunc is affirmed.

¶ 23 **AFFIRMED.**

BARNES, P.J., and FISCHER, V.C.J., concur.

---

2. Husband issued a subpoena to Wife's former attorney to testify at the September 2009 hearing. Wife's successor attorney then filed a motion to quash the subpoena on grounds of attorney-client privilege. The record does not reflect a ruling on this motion or issue.