No. 96-235

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE THE ESTATE OF

LOU E. HILL,

Deceased.


APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and for the County of Garfield,
The Honorable Kenneth R. Wilson, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Duncan A. Peete, Moulton, Bellingham, Longo &
Mather, Billings, Montana

For Respondent:

Mark D. Parker, Nicole A. Temkin, Parker Law Firm,
Billings, Montana


Submitted on Briefs: November 21, 1996

Decided:   February 6, 1997
Filed:

_____

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant Louanne Woodford (Louanne) appeals the decision of the Sixteenth Judicial District Court, Garfield County, holding that two disputed bank accounts were the property of Lou E. Hillþs probate estate, and further holding that Lou E. Hill (Hill) had not intended to leave the disputed accounts to Louanne as his joint tenant with right of survivorship. We reverse and remand.

ISSUES

The following issues are presented on appeal:

1. Did the District Court err in concluding that the disputed bank accounts were assets of Hillþs probate estate and not joint accounts with rights of survivorship between Hill and Louanne?

2. Did the District Court err in concluding that the Inventory and Appraisement of Hillþs estate constituted a judicial admission by Louanne that the disputed accounts were assets of Hillþs probate estate?

FACTS

In 1984, Hill opened a joint checking account with his wife, Margaret, at the Garfield County Bank. After Margaret died in 1985, Hill executed a new signature card for the account with his daughter, Louanne. The new signature card was signed by both Hill and Louanne as authorized signatories and listed the account as a joint account with right of survivorship. Also in 1985, Hill and Louanne opened a second checking account at the First National Bank in Miles City. The signature card for this account also was signed by both of them and indicated the account was a "joint" one.

Louanne testified that the accounts were for her fatherþs use during his lifetime. She further testified that her father told her that, in the event of his death, she should pay his immediate expenses from these accounts and then do as she pleased with the balance of the money.

In December 1990, Hill died testate in Garfield County. His daughter, Louanne, and his son, Phil Hill (Phil) were named by his will as co-personal representatives. Phil and Louanne were also the major beneficiaries of Hillþs will. After Hillþs death, Louanne closed the Garfield County Bank joint account and deposited the remaining funds into an individual account. She also executed a new signature card at the First National Bank in Miles City, changing the joint checking account at that bank to an individual account as well.

During preparations for the probating of Hillþs estate, a dispute arose regarding how the two bank accounts should be treated. The attorney handling the estate notified Louanne and Phil that he needed to know whether the accounts were estate

property or Louanne's property.  The treatment of the accounts dictated whether they would be included in the estate's inventory or not.  Louanne contended that her right of survivorship meant the funds in the accounts belonged to her, not to the estate.  Phil contended that Hill had not intended to gift Louanne with the accounts prior to his death and, therefore, the accounts were properly included as part of Hill's estate.

The attorney presented the parties with copies of the estate inventory which did not include the accounts as part of the estate.  At some point, the attorney redrafted the inventory and moved the accounts from the joint property schedule to the estate property schedule.  Both Phil and Louanne initialed the changes and signed the inventory, which was subsequently filed with the District Court.

Phil then petitioned the District Court for an accounting of the location and use of the accounts, which he contended were estate property.  In response, Louanne moved to dismiss Phil's petition, asserting that the accounts were originally jointly owned by her and her father and, since his death, were owned by her alone.  She therefore asserted that the estate was not entitled to an accounting regarding the accounts.  After a hearing, the District Court concluded that the nature of the accounts was ambiguous, justifying an inquiry into Hill's actual intent.  It further concluded that Louanne's name was placed on the accounts for convenience's sake only, and that the accounts were estate property.  Louanne appeals.

## STANDARD OF REVIEW

This Court reviews a district court's findings of fact to determine whether they are clearly erroneous.  In re Estate of Parini (Mont.1996), 926 P.2d 741, 743, 53 St.Rep. 1062, 1063 (citing Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906).  This Court reviews a district court's conclusions of law to determine whether the court's interpretation of the law was correct.  Parini, 926 P.2d at 743 (citing Stratemeyer v. Lincoln County (1996), 276 Mont. 67, 79, 915 P.2d 175, 182).

As a general rule, construction and interpretation of written agreements is a question of law for the court to decide.  Klawitter v. Dettman (1994), 268 Mont. 275, 281, 886 P.2d 416, 420 (citing First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152-53, 818 P.2d 384, 387).  Likewise, it is a question of law whether ambiguity exists in a written agreement.  Klawitter, 886 P.2d at 420 (citing Audit Services, Inc. v. Systad (1992), 252 Mont. 62, 65, 826 P.2d 549, 551).

## DISCUSSION

1.  Did the District Court err in concluding that the disputed bank accounts were assets of Hill's probate estate and not joint accounts with rights of survivorship between Hill and Louanne?

The disposition of the disputed bank accounts in this case depends on how the accounts are classified, whether as joint tenancies with rights of survivorship; as tenancies in common; or as personal accounts of Lou E. Hill. The District Court concluded the accounts were the personal property of Lou E. Hill and, therefore, became part of his estate upon his death.

The creation of a joint tenancy (or joint interest) with right of survivorship is governed by statute. Section 70-1-307, MCA, provides:

A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy or when granted or devised to executors or trustees as joint tenants.

Under the plain language of the above statute, a right of survivorship may only be created by the inclusion of an express declaration indicating the partiesþ intent to create it. A tenancy in common is also statutorily defined:

Every interest created in favor of several persons in their own right, including husband and wife, is an interest in common unless acquired by them in partnership for partnership purposes or unless declared in its creation to be a joint interest, as provided in 70-1-307, MCA.

Section 70-1-314, MCA.

When the classification of a bank account is in dispute, the court first looks at the signature card accompanying the account in order to resolve the problem. Casagranda v. Donahue (1978), 178 Mont. 479, 483, 585 P.2d 1286, 1289 (citing State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989). The court must then determine whether the signature card complies with the statutory requirements, set out above, for creating a joint tenancy with right of survivorship or a tenancy in common. Estate of Lahren (1994), 268 Mont. 284, 286, 886 P.2d 412, 413.

a. The Garfield County Bank account.

The signature card for the Garfield County Bank account lists the account in the name of Lou E. Hill alone. However, both Hill and Louanne signed as authorized signatories and the account is denominated as a "joint" account. In addition, the Garfield County Bank signature card explicitly set forth a paragraph describing the account as a "joint account, with right of survivorship." Both Hill and Louanne again signed the signature card below this paragraph, acknowledging that they had read and understood it.

The District Court, however, focused on the fact that the account was listed in the name of Lou E. Hill alone and, on that basis, determined that the signature card was ambiguous. As noted

above, the determination of whether an agreement is ambiguous is a question of law which this Court reviews for correctness. Klawitter, 886 P.2d at 420. Given the statutory parameters for the creation of a joint tenancy with right of survivorship, we conclude that the District Courtþs determination of ambiguity was incorrect.

Section 70-1-307, MCA, requires an express declaration of the intent to create a joint tenancy. The Garfield County Bank signature card expressly declared that the account created was a joint tenancy with right of survivorship. Both Hill and Louanne signed the signature card below the paragraph setting forth this declaration. In so doing, they both indicated that they understood and agreed that the account should carry a right of survivorship. The language used could hardly be clearer, and the failure of the bank to list the account in both their names cannot overcome it.

Since the signature card followed the statutorily mandated procedure for creating a joint tenancy with right of survivorship, there was nothing left for the court to construe. Therefore, the District Courtþs determination of ownership of the Garfield County Bank account is reversed.

b. The First National Bank of Miles City account.

Like the Garfield County Bank account signature card, the First National Bank of Miles City signature card was marked as a "joint" account. But unlike the other accountþs signature card, the signature card for the First National Bank of Miles City account carried the names of both Hill and Louanne. And, unlike the other account, the Miles City account lacked any specific language indicating that the account was a joint tenancy with right of survivorship. The only indication of intent is found in the checking of the box next to the word "joint." Based on the lack of any other indication on the signature card regarding how the account should be treated, the District Court determined the card was ambiguous, justifying an inquiry into the actual intent of the decedent when the account was opened.

However, as noted above, 70-1-314, MCA, expressly provides that "[e]very interest created in favor of several persons in their own right . . . is an interest in common" if it is not a partnership asset or a joint tenancy with right of survivorship. No one argues that the disputed bank account was established as a partnership asset, and the account cannot be a joint tenancy because the necessary "express declaration" is lacking. Therefore, the interest is a tenancy in common. The District Courtþs acceptance of parol evidence to discern Hillþs intent does not take into account the existence of this statute, which, if applied, conclusively settles the issue of ownership.

This conclusion is supported by this Courtþs decisions In re Estate of Shaw (1993), 259 Mont. 117, 855 P.2d 105, and Lahren, 886 P.2d 412. In Shaw, this Court acknowledged that the various earlier decisions in this area were to some extent inconsistent.

We therefore stated:

Without attempting to reconcile all of the various cases dealing with the creation of joint tenancies that have come before this Court, we hold as follows:

1. The creation of a joint tenancy (same as [a] joint interest) in property is by Montana statute. Sections 70-1-307 and 70-1-314, MCA, mandate that if parties want to create a joint tenancy (same as [a] joint interest) in property, they must make an express declaration that they intend to create a joint tenancy or joint interest. Simply using words such as "or" or "and/or" without expressly using the words "joint tenancy," "joint tenancy with right of survivorship," or "joint interest" will not suffice to create a joint tenancy, absent a specific statute to the contrary.

2. In the event the parties do not expressly declare that the ownership interest created in the instrument of title or transfer is a joint tenancy or joint interest or a partnership interest, then a tenancy in common or interest in common will be created.

Shaw, 855 P.2d at 111. See also Lahren, 886 P.2d at 413.

In determining that an inquiry into the decedentþs actual intent was warranted, the District Court relied on Seman v. Lewis (1992), 252 Mont. 508, 830 P.2d 1294. While noting the applicability of 70-1-307, MCA, this Court in Seman overlooked the secondary applicability of 70-1-314, MCA, which mandates that an interest held by more than one person, if it is not a partnership asset or a joint tenancy with right of survivorship, must be deemed a tenancy in common. To the extent that the authorization of the use of extrinsic evidence in Seman contradicts the dictates of 70-1-314, MCA, Seman is overruled.

Since Hill and Louanne created a joint interest in the Miles City bank account which is not a joint tenancy with right of survivorship or a partnership asset, the account must be construed as a tenancy in common. Section 70-1-314, MCA. As such, each holder of an interest in the account is entitled to a proportional share of its proceeds. Therefore, the estate inherits Hillþs one-half interest as his successor, while Louanne retains her one-half share.

2. Did the District Court err in concluding that the Inventory and Appraisement of Hillþs estate constituted a judicial admission by Louanne that the disputed accounts were assets of Hillþs probate estate?

As a second basis for determining that the disputed accounts should be included in the estate, the District Court noted that Louanne herself had acquiesced to such a result when she allowed the accounts to be listed as estate property on the estate inventory, which she then initialed. The District Court concluded

that the signing and filing of the estate inventory was a judicial admission by Louanne that the accounts were estate property. The court deemed Louanne to be bound by this judicial admission, barring her from later arguing that the accounts were not estate property. For her part, Louanne contends that she did not understand the legal consequences of moving the accounts from one schedule to another within the estate inventory. She asserts that she believed at the time that the change was made for tax purposes only and that it would not affect her claimed ownership of the accounts.

A "judicial admission" is "an express waiver made in court by a party or his attorney conceding for the purposes of trial the truth of some alleged fact." Kohne v. Yost (1991), 250 Mont. 109, 112, 818 P.2d 360, 362. (See also Blackþs Law Dictionary 48 (6th ed. 1990): "Judicial admissions are those made in court by a personþs attorney for the purpose of being used as a substitute for the regular legal evidence of the facts at the trial.") This Court, however, has stated that judicial admissions need not necessarily be made in court. Rather,

[j]udicial admissions may occur at any point during the litigation process. They may arise during discovery, pleadings, opening statements, direct and cross-examination, as well as closing arguments.

Kohne, 818 P.2d at 362 (citation omitted).

In this case, however, the initialing and signing of the inventory was not done in the course of litigation but, rather, in the course of probate. The events which in this case gave rise to litigation must not be confused with the litigation itself; they are two separate and distinct events. Therefore, Louanneþs initialing of the estate inventory cannot be considered a judicial admission because it did not occur during the course of litigation.

There is, however, a statutorily-created conclusive presumption which Phil argues may be applicable. Section 26-1-601, MCA, provides in part:

The following presumptions are conclusive . . . (1) the truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act, or omission, whenever he has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief.

Section 26-1-601(1), MCA. This is "the statutory codification of the doctrine of equitable estoppel." Belehumeur v. Dawson (D.Mont.1964), 229 F.Supp. 78, 86. Unlike the case law regarding judicial admissions, the codified version of the equitable estoppel doctrine does not require that the declaration, act, or omission occur during litigation. Instead, it requires only that litigation

arise out of the declaration, act, or omission. Equitable estoppel, however, involves far more than the mere existence of a declaration, act, or omission which gives rise to litigation. Equitable estoppel requires the proof of six separate elements:

1) There must be conduct, acts, language or silence by the estopped party amounting to a representation or concealment of facts;

2) these facts must be known to the estopped party at the time of the conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to the estopped party;

3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time they were acted upon;

4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under circumstances that it is both natural and probable that it will be acted upon;

5) the conduct must be relied upon by the other party; and

6) the other party must in fact act upon it in such a manner as to change the other partyþs position for the worse.

Bache v. Owens (Mont.1996), P.2d , , 53 St.Rep. 1320, 1322-23 (citing Ducham v. Tuma (1994), 265 Mont. 436, 441, 877 P.2d 1002, 1006). Furthermore, "equitable estoppel is not favored and will be sustained only upon clear and convincing evidence." Bache, 53 St.Rep. at 1322 (quoting Ducham, 877 P.2d at 1006).

In this case, Phil argues that estoppel is appropriate to prevent Louanne from claiming the disputed accounts as her own, given that she formerly allowed their inclusion in her fatherþs probate estate. Equitable estoppel cannot apply, however, because Phil, acting on behalf of the estate, failed to prove each and all of the necessary elements. In particular, Phil has not shown that the estate relied on Louanneþs representation to its detriment. In addressing this element, Phil claims a detriment arising from his agreement to pay one-half of the estate taxes if Louanne included the accounts in the estate. This does not translate into a detriment to the estate, however. If the disputed accounts are excluded, the estate taxes will be reduced accordingly. Phil, as personal representative and as an heir, may well have an obligation to allocate the taxes due on the estate and to pay some portion thereof. This obligation, however, is not dependent on the issue of which specific assets are or are not included in the estate.

Phil also raises on appeal the applicability of the doctrine of judicial estoppel. He acknowledges, however, that he "did not plead or attempt to prove judicial estoppel" at the hearing before

the District Court.  It is well settled that this Court will not hear an issue which is raised for the first time on appeal. Rasmussen v. Lee (1996), 276 Mont. 84, 88, 916 P.2d 98, 100 (citation omitted).  We therefore decline to address the possible applicability of this separate but related doctrine.

Reversed and remanded for proceedings consistent with this opinion.

/S/  WILLIAM E. HUNT, SR.


We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER
/S/  KARLA M. GRAY