No. 05-136

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 180

KENNETH L. OSTER,

   Plaintiff and Respondent,

  v.

VALLEY COUNTY, MONTANA,
A Body Politic,

   Defendant and Appellant.

APPEAL FROM:  The District Court of the Seventeenth Judicial District,
       In and For the County of Valley, Cause No. DV 2004-01,
       Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      Maxon R. Davis, James A. Donahue, Davis, Hatley, Haffeman
      & Tighe, P.C., Great Falls, Montana

    For Respondent:

      James D. Rector, Attorney at Law, Glasgow, Montana

    For Amicus Curiae:

      The Honorable Mike McGrath, Attorney General, Chris D. Tweeten,
      Assistant Attorney General, Helena, Montana

           Submitted on Briefs: December 13, 2005

               Decided:  August 8, 2006

Filed:

    _____
          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 County Attorney Kenneth Oster (Oster) filed suit in the District Court to recover unpaid wages, related penalties, and attorney fees from Valley County (County). The District Court granted summary judgment in favor of Oster. County appeals. We affirm in part and reverse in part.

## ISSUES

¶2 The restated issues on appeal are:

1. Whether Oster is estopped from bringing a claim for unpaid wages against the County.

2. Whether the District Court erred in ruling that County Attorney Oster is entitled to payment of his salary increase by the County.

3. Whether the District Court erred in ruling that Oster is a County employee.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Oster, the elected County Attorney in Valley County, brought suit against the County for underpayment of his salary. Oster filed his claim after the County thrice denied his requests to increase his paychecks to reflect his County-approved pay raise scheduled to take effect on July 1, 2003.

¶4 As part of the County's annual budgeting process, the three County Commissioners appointed a County Compensation Board (Board), comprised of themselves and Oster in his capacity as County Attorney. On July 28, 2003, in accordance with § 7-4-2305, MCA, the Board prepared a compensation schedule of salaries for the County's elected officials, including Oster. The Board recommended to the Commissioners that Oster's salary be increased by 7%, from $64,843.00 to $69,382.00 for fiscal year 2004, which commenced on July 1, 2003.

¶5     During their budget deliberations, members of the Board discussed whether the County or the State Department of Justice (DOJ) would be responsible for funding Oster's raise. The Board was informed both by their experience in years past and by Oster that the salary of the County Attorney is generally paid half by the County and half by the State. However, each member of the Board had received a memo from the Attorney General's (AG) office, dated June 4, 2003, explaining that as a result of budget decisions made by the 2003 Legislature, state funds appropriated for State contributions to county attorneys' salaries for fiscal years 2004 and 2005 would be limited to "fifty percent of the legislature's understanding of the actual salaries in fiscal year 2003." The AG advised that the County was not limited by the State's contribution, but would be responsible for any balance above that budgeted and appropriated by the State. Subsequently, on June 6, 2003, DOJ sent a letter to the Commissioners, Oster, and others with an attached schedule specifying the total amount the State would contribute to Oster's salary in fiscal year 2004. The letter clarified that $32,422.00 was the "maximum the state can pay for its share, and is the portion included in the total legislative appropriation for county attorneys."

¶6     On July 28, 2003, the Commissioners accepted the Board's recommendation regarding salaries for the County Attorney and other County officers by Resolution No. 30-2003, and established Oster's salary at $69,382.00. The Commissioners approved Oster's raise despite having received information that the State's contribution would be limited to half of $64,843.00, or $32,422.00.

¶7     Oster's raise went into effect on July 1, 2003. Oster then received bi-weekly paychecks from the County in the amount of $2,571.75, an $87.27 per paycheck shortfall from the County-approved salary he should have received. Oster's requests that the County make up the shortfall were rejected.

¶8    After the County refused to make up the deficiency, Oster filed suit.  The District Court granted Oster's Motion for Summary Judgment and ordered the County to pay him $3,411.00, representing Oster's salary shortfall for fiscal year 2004 and a portion of fiscal year 2005, plus statutory penalties, costs and attorney fees.  The County appeals.

## STANDARD OF REVIEW

¶9    We review a district court's grant of summary judgment *de novo,* and apply the same criteria applied by the district court pursuant to Rule 56(c), M.R.Civ.P.  *Hanson v. Water Ski Mania Estates,* 2005 MT 47, ¶ 11, 326 Mont. 154, ¶ 11, 108 P.3d 481, ¶ 11.  A district court properly grants summary judgment only when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  *Oberson v. Federated Mut. Ins. Co.,* 2005 MT 329, ¶ 8, 330 Mont. 1, ¶ 8, 126 P.3d 459, ¶ 8.

## DISCUSSION

## ISSUE ONE

¶10    *1.  Whether Oster is estopped from bringing a claim for unpaid wages against the County.*

¶11    The County argues that Oster's wage claim against the County should be estopped because Oster knew and actively concealed the fact that the State would contribute only $32,422.00 towards his salary.  The County further alleges that Oster misled the Board to its detriment into believing that the State would pay half of his salary increase.

4

¶12    "Equitable estoppel is not favored and will be sustained only upon clear and convincing evidence." *In re Estate of Hill* (1997), 281 Mont. 142, 151, 931 P.2d 1320, 1326 (citation omitted).   The defense of equitable estoppel and waiver requires the party invoking its protections to prove each of six elements.  The party must show:

1. Conduct, acts, language or silence by the estopped party amounting to a representation or concealment of material facts;

2.  These facts were known to the estopped party at the time of the conduct, or at least the circumstances were such that knowledge of them is necessarily imputed to the estopped party;

3.  The truth concerning these facts was unknown to the party claiming the benefit of the estoppel at the time they were acted upon;

4.  The conduct was done with the intention, or at least the expectation, that it would be acted upon by the other party, or under circumstances that it is both natural and probable that it would be acted upon;

5.  The conduct was relied upon by the other party; and

6.  The other party acted upon it in such a manner as to change the other party's position for the worse.

*In re Estate of Hill,* 281 Mont. at 150-51, 931 P.2d at 1326 (citations omitted).

¶13    Equitable estoppel is inapplicable here because the County failed to prove the third element of the defense.  It is undisputed that the County received the AG's June 4, 2003 memorandum as well as DOJ's June 6, 2003 letter specifying that the State's contribution to Oster's salary would be limited to $32,422.00 in fiscal year 2004.  Even if we take as true the County's allegations of misrepresentation by Oster, the fact remains that by virtue of the communications from the State directly to the Board and Commissioners, the County knew the truth of the facts which Oster allegedly misrepresented at the time it approved Oster's pay raise.

We conclude, therefore, that the County cannot prove the necessary elements of estoppel, and its defense fails.

## ISSUE TWO

¶14 *Whether the District Court erred in ruling that County Attorney Oster is entitled to payment of his salary increase by the County.*

¶15 Resolution of this issue requires reconciliation of three statutes which collectively direct how payment of county attorneys' salaries is apportioned between the State and Montana's counties. Section 7-4-2502(2)(a), MCA, provides:

> The salary of the county attorney is payable one-half from the general fund of the county and, if the county has supplied the information to the department of justice for inclusion in its budget, the other one-half from the state treasury upon the warrant of the state treasurer. If the county has not supplied information concerning any scheduled or proposed increase in salary for the county attorney to the department of justice for inclusion in material submitted to the budget director under Title 17, chapter 7, part 1, the county is responsible for any increased salary. The state's share of the county attorney's salary is payable every 2 weeks.

The general precept that the State and the counties each pay one-half of county attorneys' salaries is reiterated in § 7-6-2426(1)(b), MCA, which lists "one-half of the salary of the county attorney" as an enumerated county charge. However, § 17-7-112(2)(b), MCA, provides that only those funds which DOJ appropriates will account for the State's contribution to county attorneys' salaries:

> As provided in 7-4-2502(2)(a), the department of justice is not obligated to provide more than one-half of the salary of a county attorney based on the amount included in the department's budget and appropriated for that purpose.

¶16 These statutes appear to conflict when, as here, DOJ's budgeted and appropriated funds for a county attorney's salary are less than one-half the salary a county awards its county attorney. As such, County urges this Court to limit the scope of our statutory application to §§ 7-

4-2502 and 7-4-2426, MCA, which, in the County's view, would relieve it of any obligation to make up the shortfall in Oster's wages. The County argues that § 17-7-112(2)(b), MCA, is irrelevant because the State is not being asked to pay "more than one-half" of Oster's salary, but rather is being asked to pay one-half of Oster's *actual* salary instead of one-half of what DOJ appropriated for Oster's salary. In so arguing, however, County ignores the operative language contained in the statute which clarifies the State will only pay "one-half of the salary of a county attorney *based on the amount included in the department's budget and appropriated for that purpose*." Section 17-7-112(2)(b), MCA (emphasis added).

¶17    This Court's rules of statutory construction require consideration and application of all three statutes. A presumption exists that the Legislature does not pass meaningless legislation, and accordingly, this Court must harmonize statutes relating to the same subject, as much as possible, giving effect to each. *Chain v. Montana Dept. of Motor Vehicles,* 2001 MT 224, ¶ 15, 306 Mont. 491, ¶ 15, 36 P.3d 358, ¶ 15 (citation omitted). Further, more specific statutes prevail over general provisions of law. *Meyer v. Montana Power Co., L.L.C.*, 2005 MT 66, ¶ 14, 326 Mont. 283, ¶ 14, 109 P.3d 269, ¶ 14 (citation omitted).

¶18    The District Court reconciled the seemingly contradictory provisions of the statutes by interpreting the specific directive set out in § 17-7-112(2)(b), MCA, as a limitation on the "one-half" provisions set out in §§ 7-4-2502 and 7-4-2426, MCA. In so doing, the District Court concluded the State was only obligated to contribute to Oster's salary the amount budgeted and appropriated for that purpose. If the County had set Oster's salary at twice the amount budgeted by DOJ, the State's obligation to pay one-half would have been fully effective. However, the County awarded Oster a salary in excess of twice the amount DOJ appropriated for fiscal year 2004. The District Court further concluded that the County could have avoided this situation by

7

setting its budget for 2004 and 2005 in advance of the 2003 Legislative budget deadlines as provided by § 7-4-2502, MCA.

¶19 It is undisputed that County provided information about Oster's salary to DOJ prior to DOJ's reporting deadline. The record does not, however, reflect what specific information the County provided to the State regarding Oster's scheduled *pay raise*, or when such information was provided. We cannot therefore determine whether DOJ had the information it needed in time to include Oster's salary increase in its budget proposal to the 2003 Legislature. Regardless, the record shows that the County was on notice that the State's contribution to Oster's salary in fiscal year 2004 would be limited to $32,422.00 (half of $64,843.00) as a consequence of legislative budget decisions made by the 2003 Legislature. This is evidenced by both the AG's June 4, 2003 memo and the DOJ's June 6, 2003 letter. Despite this knowledge, the County on July 28, 2003, by Resolution No. 30-2003, authorized a 7% raise for Oster setting his salary at $69,382.00.

¶20 As we concur with the District Court's interpretation of the three statutes which determine how county attorneys' salaries are to be paid—namely §§ 7-4-2502 and 7-4-2426, and 17-7-112(2)(b), MCA—we must conclude that the counties are responsible for any increases in county attorneys' salaries which are not taken into account and included in DOJ's appropriations for that purpose. We therefore affirm the District Court's Order requiring the County to pay Oster's wage shortfall from July 1, 2003, to December 25, 2004, in the amount of $3,411.00.

### ISSUE THREE

¶21 *3. Whether the District Court erred in ruling that Oster is a County employee.*

¶22 In addition to seeking recovery of his salary deficiency, Oster sought relief in the District Court for violation by the County of § 39-3-206, MCA, which mandates a penalty against

8

employers who fail to pay employees. The County admits it is an "employer" as defined by the statute, but contends Oster is not the County's "employee." For the purposes of § 39-3-206, MCA, wage claims, an "employee" includes "any person who works for another for hire." Section 39-3-201(4), MCA.

¶23 In its Order, the District Court determined Oster was an "employee" of the County as defined by § 39-3-206, MCA. Further, the District Court found that because the County failed to pay Oster's wages, Oster was entitled not only to full payment of his wages, but also to a damages penalty in the amount of 110% of his wages, plus costs and attorney fees. For the reasons set forth below, we conclude that Oster is not an "employee" of the County as defined for purposes of applying § 39-3-206, MCA, and therefore we reverse the District Court's Order for a penalty, costs, and attorney fees to be paid by the County.

¶24 Elected county officials are employees of counties for liability purposes. Section 2-9-101(2), MCA; *Kenyon v. Stillwater County* (1992), 254 Mont. 142, 146, 835 P.2d 742, 745. The question here, however, is whether the County has the authority to hire and fire Oster sufficiently to bring him within the definition of "employee" as set forth by § 39-3-201(4), MCA.

¶25 Oster was elected to the office of County Attorney by the citizens of Valley County. In *Geiger v. Department of Revenue*, we evaluated the employment status of an elected county assessor and determined that the county assessor was "employed" by her constituents, and served at the pleasure of the voters who elected her. *Geiger* (1993), 260 Mont. 294, 299, 858 P.2d 1250, 1253. We further concluded that the statutorily-mandated supervisory relationship between the county assessor and the Department of Revenue (DOR) did "not rise to the level of an employer and employee." *Geiger,* 260 Mont. at 299, 858 P.2d at 1253. We said that while county assessors are agents of the DOR for some specific purposes, the assessor could be

removed from her office only "if the electorate chose to recall her or if she was convicted of official misconduct." *Geiger,* 260 Mont. at 299, 858 P.2d at 1253. In essence, the county voters hired and employed the county assessor.

¶26 Similarly, Oster serves as the County Attorney at the pleasure of the voting citizens of the County. Neither the Commissioners nor any other agent of the County hired Oster or control whether Oster retains his position. Though the Commissioners may appoint a replacement county attorney when the office is vacated between elections as provided by § 7-4-2702, MCA, the Commissioners may neither hire nor fire the county attorney once the voters have elected him.

¶27 In support of his contention that he is in fact an "employee" of the County, Oster offers admissions from the County that it "provides office, staff, and overhead and Oster is the County's legal counsel." Additionally, the County's payroll roster lists Oster as an employee, and a February 2004 Employee Listing shows Oster as an employee and references his employee number and date of employment, among other factors reflecting his relationship with the County. Notwithstanding, we find these factors indeterminate in light of our holding in *Geiger*, as none of the factors argued by Oster establish the County's ability to hire, fire, or affirmatively direct Oster's work as the County Attorney. Quite simply, Oster does not work for the County "for hire."

¶28 Therefore, in keeping with the clear language of § 39-3-201(4), MCA, and our analysis in *Geiger*, we conclude that though Oster certainly acts as an agent of the County, in light of his election and ultimate accountability to the people of Valley County, Oster is not a County "employee" within the meaning of the above referenced statute. Accordingly, we reverse the District Court's Order of penalty, costs and attorney fees.

10

## CONCLUSION

¶1      For the foregoing reasons, we affirm in part and reverse in part.


/S/ PATRICIA COTTER


We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS