CHIEF JUSTICE GRAY,
dissenting.
¶57 I respectfully dissent from the Court’s interpretation of Article III, Section 4(3) of the Montana Constitution as absolutely barring-and rendering moot-the final resolution of this case which began before the election was held on 1-151. Based on the plain language of the constitutional provision, together with the only relevant portion of the transcript from the 1972 Montana Constitutional Convention, I would hold that Article III, Section 4(3) does not bar the final resolution of this case. In addition, I would reverse the District Court’s legal interpretation of § 3-5-302(6)(b), MCA, and, therefore, its order granting summary judgment. I would remand to the District Court for its post-trial findings of fact and conclusions of law on the underlying question in the action.
¶58 Article III, Section 4(3) provides that “[t]he sufficiency of the initiative petition shall not be questioned after the election is held.” It is undisputed that the present case involves “the sufficiency” of an initiative petition, rather than its substance.
¶59 Article III, Section 4(3)’s phrase “shall not be questioned” needs little interpretation. It is clear, unambiguous and susceptible to only one rational interpretation. The American Heritage Dictionary 1070 (New Coll, ed., Houghton Mifflin Co. 1982) defines “question” as “[a]n expression of inquiry that invites or calls for a reply[.]” Similarly, Black’s Law Dictionary 1259 (7th ed., West Group 1999) defines “question” as “[a]n issue in controversy; a matter to be determined.” Thus, pursuant to the plain meaning of the phrase, I conclude “shall not be questioned” means shall not be put into controversy or raised as a matter to be determined.
¶60 The nub of the issue before us, however, relates to Article III, Section 4(3)’s phrase “after the election is held,” not the phrase “shall not be questioned.” In this regard, it is appropriate to begin with Delegate Joyce’s remarks during the 1972 Constitutional Convention. The Court faithfully reports Delegate Joyce’s remarks, highlighting the *469 portion stating that “this little sentence ...-would make it perfectly clear in the future that once the election is held, why, you can’t challenge the sufficiency of the petitions.” See Opinion, ¶ 29. Delegate Joyce’s quoted remark-as well as those prior to this quoted portion-clearly reflect that his interest in adding the language now before us arose from an earlier case in which the sufficiency of petitions had not been challenged until “after the election was held.” See Opinion, ¶ 29.
¶61 That is not the situation before us in this case. The facts here are that Montanans for Equal Application challenged-that is, raised a question about-the sufficiency of the 1-151 petitions before the election was held. Delegate Joyce’s remarks support an interpretation that a question regarding the sufficiency of an initiative petition must be raised-that is, filed in a court of competent jurisdiction-prior to the election on the substance of the petition. His remarks do not support the Court’s interpretation of “after the election is held.”
¶62 Nor does the Graham case, relied on by the Court, support its interpretation. As the Court correctly states, Graham is the case to which Delegate Joyce referred during the Constitutional Convention. In that 1951 case, the sufficiency of a petition was not challenged at all prior to the election. The only significance Graham has to the case now before us is Delegate Joyce’s reliance on it in proposing the language that became Article III, Section 4(3). Had Article III, Section 4(3) existed in 1951 at the time Graham was decided, the case presently before us would not have reached this Court. However, this constitutional language did not exist in 1951 and, as a consequence, the Graham Court looked to other jurisdictions which had ruled on related facts and issues. It is no longer necessary or appropriate to do so. For this Court now-in “interpreting” language which only came into existence more than 20 years after Graham-to attempt to rely on the same cases from other jurisdictions as the Graham Court relied on is somewhat disingenuous. Graham and the cases relied on therein have no relevance whatsoever to the present case and provide no basis for the Court’s interpretation of the current constitutional language “after the election is held.”
¶63 I am similarly unpersuaded by the Court’s characterization of Delegate Etchart’s statements during the Constitutional Convention, set forth in Opinion ¶ 27, as somehow supporting the result it reaches. The Court does not misquote Delegate Etchart. Importantly, however, the Court fails to take into account that Delegate Etchart’s comments *470 preceded Delegate Joyce’s and properly can be relied on only in the context in which they were made.
¶64 The portion of the Constitutional Convention transcript immediately preceding Delegate Etchart’s comments clearly establishes that the delegates were focused on Section 4 as proposed at that time. At the time of Delegate Etchart’s comments, Section 4 read as follows:
The people may enact laws by initiative in all matters except appropriations of money and local or special laws prohibited by this Constitution. The highway revenue provided for in Article blank, Section 6, shall nevertheless be subject to appropriation by initiative. Initiative petitions must be signed by 5 percent or more of the legal voters in each of one-third or more of the legislative representative districts, and the total number of signers must be 5 percent or more of the total legal voters of the state. Each petition must contain the full text of the proposed measure. Petitions must be filed with the Secretary of State 4 months or more prior to the election at which they will be voted upon. The enacting clause of all initiative measures shall be: “Be it enacted by the people of the State of Montana.”
See Montana Constitutional Convention, Verbatim Transcript, March 18, 1972, pp. 2695-96. Thus, Delegate Etchart’s comments about preventing “frivolous legislative efforts by a small minority,” and still allowing “serious popular measures to be initiated by the people[,]” clearly related only to provisions contained in that proposed version of Section 4 relating to the five percent of the voters and number of legislative districts. No nexus exists at all between Delegate Etchart’s comments and the language later proposed by Delegate Joyce, ultimately adopted and now before us.
¶65 Article III, Section 4(3) prohibits challenges to the sufficiency of initiative petitions raised “after the election is held.” Properly applied to the present case, the challenge raised on October 3, 2006, when Montanans for Equal Application filed its complaint in the District Court, is not barred by Article III, Section 4(3).
¶66 It strikes me that the closest the Court actually comes to addressing this issue is its reliance on statements from ¶ 31 of our recent opinion in Montanans for Justice. In my view, since the issue before us in the present case was not raised or briefed in the earlier case, the statements on which the Court relies are dicta in their entirety. Moreover, Montanans for Justice, ¶ 31, is merely the backdrop to our discussion of the issue actually before us there, *471 namely, whether the party’s due process rights had been violated via a truncated period ordered by a district court for discovery and other pretrial processes after the timely filing of a challenge to the sufficiency of petitions on other initiatives. Indeed, the issue now before us could not have been raised in Montanans for Justice since our opinion was issued on October 26, 2006, prior to the general election in November. Therefore, Montanans for Justice is neither precedent nor persuasive authority for the Court’s decision here.
¶67 Finally, it is critical to take note of Article IV, Section 7(2) of the Montana Constitution, which provides that “[a] preelection challenge to the procedure by which an initiative or referendum qualified for the ballot ... shall be given priority by the courts.” This constitutional provision clearly does not require that a final judicial determination on a preelection challenge must be completed prior to the election. Just as clearly, Article IV, Section 7(2) negates the Court’s reliance on Montanans for Justice and the language therein for its determination that, absent a final preelection adjudication of a challenge to the sufficiency of a petition, judicial resolution of the case is barred and the question is rendered moot.
¶68 I would hold that Article III, Section 4(3) of the Montana Constitution does not bar-and does not render moot-the issue properly before us, which is whether the District Court erred in interpreting § 3-5-302(6), MCA, as barring Montanans for Equal Application’s challenge to 1-151.1 turn now to that issue.
¶69 Defendant Raise Montana moved for summary judgment in the District Court contending that the complaint filed by Montanans for Equal Application was barred by the statute of limitations set forth in § 3-5-302(6)(a), MCA. Montanans for Equal Application opposed the motion based on § 3-5-302(6)(b), MCA. The District Court determined no genuine issue of material fact existed with regard to the statute of limitations and granted summary judgment to Raise Montana. In my view, the District Court erred in interpreting the statutes.
¶70 Section 3-5-302(6)(a), MCA, provides:
Except as provided in subsection (6)(b), a contest of a ballot issue submitted by initiative or referendum may be brought prior to the election only if it is filed within 30 days after the date on which the issue was certified to the governor ..., and only for the following causes:
(i) violation of the law relating to qualifications for inclusion on the ballot;
*472 (ii) constitutional defect in the substance of a proposed ballot issue; or
(in) illegal petition signatures ....
Section 3-5-302(6)(b), MCA, provides that a “contest of a ballot issue based on subsection (6)(a)(i) or (6)(a)(iii) may be brought at any time after discovery of illegal petition signatures[.]”
¶71 It is undisputed that Montanans for Equal Application generally alleged illegal petition signatures pursuant to § 3-5-302(6)(a)(iii), MCA, and mentioned in § 3-5-302(6)(b), MCA. It also is undisputed that their complaint was not filed within the 30 days after the certification as generally required in § 3-5-302(6)(a), MCA. Thus, only the interpretation of the phrase “after discovery of illegal petition signatures” in § 3-5-302(6)(b), MCA, was before the District Court.
¶72 The District Court properly began its analysis by recognizing that a challenge based upon illegal signatures is exempt from the 30-day general limitation period set forth in § 3-5-302(6)(a), MCA. It then properly turned to the word “discovery” contained in § 3-5-302(6)(b), MCA.
¶73 Thereafter, the District Court turned to § 27-2-102(2) and (3), MCA, the statute defining when a civil action is commenced, and imposed that statute’s duty of due diligence onto the case before it. The District Court concluded that
lack of knowledge does not extend the period of limitation and the period runs from the time that the facts constituting the claim could have been discovered in the exercise of due diligence.
Acknowledging that § 27-2-102, MCA, appears in the statute of limitations title of the Code, separate from the statute before it, the District Court further concluded that § 27-2-102, MCA, “enunciate[s] the legislative policy on the issue.” In my view, the District Court erred.
¶74 I begin my analysis with the most basic rules of statutory construction. In interpreting a statute, a judge is “simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. We discern the Legislature’s intent-whenever possible-by looking to the plain and ordinary meaning of the language contained in a statute. See In re R.L.S., 1999 MT 34, ¶ 8, 293 Mont. 288, ¶ 8, 977 P.2d 967, ¶ 8 (citation omitted). Finally, more specific statutes prevail over general provisions of law. Oster v. Valley County, 2006 MT 180, ¶ 17, 333 Mont. 76, ¶ 17, 140 P.3d 1079, ¶ 17 (citation *473 omitted). The District Court’s interpretation fails to satisfy any of these rules of statutory construction.
¶75 It is my view that the District Court improperly inserted the due diligence requirement into § 3-5-302(6)(b), MCA, in violation of its § 1-2-101, MCA, obligation to not “insert what has been omitted.” Section 3-5-302(6)(b), MCA, speaks only to “discovery.” Similarly, the plain language of § 3-5-302(6)(b), MCA, extends the 30-day limitation period in § 3-5-302(6)(a), MCA, by allowing a ballot contest based on illegal petition signatures “after discovery” of such signatures. In my view, discovery means discovery. Here, Montanans for Equal Application discovered the allegedly illegal petition signatures after the 30-day limitation period and filed its complaint on October 3,2006. The plain meaning of § 3-5-302(6)(a) and (b), MCA, requires nothing more insofar as the facts of the present case are concerned.
¶76 Finally, it surely must be beyond cavil that § 3-5-302, MCA, is a specific statute which vests original jurisdiction of certain causes of action in Montana’s district courts. Among those are preelection contests of ballot issues for which very explicit provision is made. Section 27-2-102, MCA, on the other hand, is contained in the chapter of Title 27, MCA, addressing statutes of limitations broadly and, indeed, § 27-2-102, MCA, is within Part 1 of that chapter, headed “General Provisions.” The statute itself is captioned “[w]hen action commenced.” Moreover, § 27-2-102(2), MCA, sets out the “[l]ack of knowledge ... does not postpone the beginning of the period of limitation” part of the discovery “duty” imposed on Montanans for Equal Application by the District Court. Interestingly, subsection 2 begins “[ujnless otherwise provided by statute.” Section 3-5-302(6)(b), MCA, the more specific statute, provides otherwise.
¶77 It is important for me to be clear, in closing, that Article III, Section 4(3) of the Montana Constitution clearly and unambiguously prohibits a challenge to the sufficiency of a petition filed after the election is held.
¶78 In summary, I dissent from the Court’s interpretation of Article III, Section 4(3), and would allow this case to proceed to resolution. I would hold that the District Court erred in interpreting § 3-5-302, MCA, and remand to that court for the entry of findings of fact, conclusions of law and judgment on the underlying question.
JUSTICE RICE joins in the foregoing dissenting Opinion of CHIEF JUSTICE GRAY.