JUSTICE NELSON,
dissenting.
*10 ¶32 I dissent.
¶33 Section 87-1-204, MCA, states as follows:
Political activity of employees. While retaining the right to vote as he may please and to express his opinions on all political questions, no employee of the department [of fish, wildlife, and parks] may use his official authority or influence for the purpose of interfering with an election or affecting the results thereof or for the purpose of coercing or influencing the political actions of any person or body.
¶34 In construing this statutory language, I begin with three fundamental canons of statutory construction. First, “[i]n construing a statute, this Court will look first to the language used. If the statutory language is clear and unambiguous, the statute speaks for itself and there is nothing left for the Court to construe.” Mont. Contractors’ Ass’n v. Dept. of Highways, 220 Mont. 392, 394, 715 P.2d 1056, 1058 (1986); accord Miller v. District Court, 2007 MT 149, ¶ 38, 337 Mont. 488, ¶ 38, 162 P.3d 121, ¶ 38. Second, in the construction of a statute, this Court’s job is “simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. Lastly — and this principle follows from the other two-we may not create an ambiguity where none exists, nor may we rewrite a statute, by ignoring clear and unambiguous language, in order to accomplish what we may feel is a more sensible or palatable purpose. See State ex rel. Palagi v. Regan, 113 Mont. 343, 351-52, 126 P.2d 818, 824 (1942); cf. Heggem v. Capitol Indem. Corp., 2007 MT 74, ¶ 22, 336 Mont. 429, ¶ 22, 154 P.3d 1189, ¶ 22.
¶35 With these principles in mind, § 87-1-204, MCA, clearly and unambiguously prohibits the following: use by an FWP employee of his or her official authority or influence (1) “for the purpose of interfering with an election or affecting the results thereof’ or (2) “for the purpose of coercing or influencing the political actions of any person or body.” At issue in this case is the second clause, i.e., the prohibition on “coercing or influencing the political actions of any person or body.” MSSA contends that this clause prohibits FWP employees from lobbying the Legislature, appearing before it as a proponent or opponent of legislation, and otherwise influencing the decisions of individual legislators.
¶36 It is patently obvious that each of these activities falls under the rubric of “influencing the political actions of any person or body.” This conclusion is supported by the commonly understood meanings of the *11 relevant terms. “Action” is “[t]he process of doing something” or “[a] thing done.” Black’s Law Dictionary 31 (Bryan A. Garner ed., 8th ed., West 2004). “Political” means “[pjertaining to politics; of or relating to the conduct of government.” Black’s Law Dictionary 1196. Correspondingly, a “political action” is something done in relation to politics or the conduct of government-e.g., voting for or against a particular measure. “Lobby” means:
1. To talk with a legislator, sometimes in a luxurious setting, in an attempt to influence the legislator’s vote <she routinely lobbies for tort reform in the state legislatures 2. To support or oppose (a measure) by working to influence a legislator’s vote <the organization lobbied the bill through the Senates 3. To try to influence (a decision-maker) <the lawyer lobbied the judge for a favorable rulings
Black’s Law Dictionary 956 (emphases added, citation omitted).
¶37 Notably, the definition of “lobby” is synonymous with the conduct proscribed by § 87-1-204, MCA, namely, “influencing the political actions of any person or body.” It cannot reasonably be argued that “a legislator’s vote” on a measure is not a “political action.” Accordingly, MSSA is correct that § 87-1-204, MCA, prohibits FWP from lobbying the Legislature, appearing before it as a proponent or opponent of legislation, or otherwise influencing the decisions of individual legislators.
¶38 The Court tacitly concedes this point, acknowledging that § 87-1-204, MCA, “does not limit inherently the phrase ‘political actions’ to any particular kind of government conduct.” Opinion, ¶ 20. Nevertheless, apparently not willing to accept the clear mandate of § 87-1-204, MCA, the Court decides that the statute does not quite mean what it says. The Court’s approach in this regard is reminiscent of the exchange between Alice and Humpty Dumpty:
“I don’t know what you mean by ‘glory,’ ” Alice said.
Humpty Dumpty smiled contemptuously, “Of course you don’t-till I tell you. I meant ‘there’s a nice knock-down argument for you’!”
“But ‘glorj^ doesn’t mean ‘a nice knock-down argument,’ ” Alice objected.
“When I use a word,” Humpty Dumpty said, in rather a scornful tone, “it means just what I choose it to mean-neither more nor less.”
Lewis Carroll, Alice Through the Looking-Glass 128 (Candlewick Press 2005) (originally published in 1871 as Through the Looking-Glass and *12 What Alice Found There). Reflecting a similar philosophy, the Court proclaims that “political actions” means just what this Court chooses it to mean: “partisan politics,” which we are told does not include lobbying the Legislature or appearing before it as proponents or opponents of legislation. Opinion, ¶¶ 29-30.
¶39 To justify its approach, the Court recites a parade of horribles that supposedly would ensue under MSSA’s plain-language interpretation of § 87-1-204, MCA. Specifically, the Court opines that under the plain language of the statute, FWP and its employees are prevented from fulfilling various statutory obligations and from conducting anything more than “the most basic, clerical functions.” Opinion, ¶¶ 14, 16 17. Even if this is true, however, the Court’s assumption that we may rewrite a statute because we think that the statute has created an “untenable” situation is incorrect. The task of rectifying legislatively created “absurdities” falls on the Legislature, not us.
¶40 In any event, the Court’s fear that § 87-1-204, MCA, prevents FWP from fulfilling its statutory obligations is unfounded. We have before us a statute that broadly prohibits FWP employees from using their official authority or influence for the purpose of influencing the political actions of any person or body. Section 87-1-204, MCA. The Court[1] has found a number of statutes that arguably are inconsistent with § 87-1-204, MCA. See Opinion, ¶¶ 14,16. In such circumstances, our approach is dictated by the following well-settled canons of statutory construction.
¶41 First, the Legislature is presumed to act with deliberation and with full knowledge of all existing laws on a subject; as a result, it is further presumed that the Legislature does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable. Ross v. City of Great Falls, 1998 MT 276, ¶ 17, 291 Mont. 377, ¶ 17, 967 P.2d 1103, ¶ 17. Second, it is our duty to reconcile statutes if it appears possible to do so, consistent with legislative intent. Fletcher v. Paige, 124 Mont. 114, 119, 220 P.2d 484, 487 (1950). Third, when there is a statute dealing with a subject in general and comprehensive terms, and another statute dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, as much as possible, giving effect to each. State ex rel. Boone v. Tullock, 72 Mont. 482, 486, 234 P. 277, 278-79 (1925); Schuman v. Bestrom, 214 *13 Mont. 410, 415, 693 P.2d 536, 538-39 (1985); Oster v. Valley County, 2006 MT 180, ¶ 17, 333 Mont. 76, ¶ 17, 140 P.3d 1079, ¶ 17. Lastly, where a specific statute conflicts with a general statute and cannot be harmonized to give effect to both, the specific statute controls over the general statute “to the extent of the inconsistency.” State v. Langan, 151 Mont. 558, 564, 445 P.2d 565, 568 (1968); accord Matter of Williams, 219 Mont. 6, 9, 709 P.2d 1008, 1010 (1985); see also § 1-2-102, MCA (“When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it.”); State ex rel. Special Road Dist. No. 8 v. Mills, 81 Mont. 86, 98, 261 P. 885, 890 (1927) (“Where the special statute is later, it will be regarded as an exception to or qualification of the prior general one.” (internal quotation marks omitted)).
¶42 The Court points out that FWP is required by §§ 87-1-250 and - 272, MCA, to report on specific matters to the Legislature, Opinion, ¶ 14; that FWP is authorized by § 87-5-107, MCA, to propose legislation related to a specific subject matter (namely, endangered species), Opinion, ¶ 14; that FWP is authorized or required by §§ 87-1-279,216, and -257, MCA, to negotiate, consult, or cooperate with specific agencies on specific matters, Opinion, ¶ 16; and that FWP is authorized or required by §§ 871201(9)(a)(iii), 87-5-504, and 23-2-641, MCA, to make specific requests of, or provide specific recommendations to, specific agencies concerning specific matters, Opinion, ¶ 16.
¶43 Whereas § 87-1-204, MCA, deals with the political activities of FWP employees in general and comprehensive terms, the foregoing statutes cited by the Court deal with a part of the same subject but in a more minute and definite way. All of these statutes must be read together and harmonized, as much as possible, giving effect to each. Boone, 72 Mont. at 486, 234 P. at 278-79; Schuman, 214 Mont. at 415, 693 P.2d at 538-39; Oster, ¶ 17. To the extent one of the specific statutes cannot be harmonized with the general statute (§ 87-1-204, MCA), the specific statute controls, but only to the extent of the inconsistency. Langan, 151 Mont. at 564, 445 P.2d at 568; Williams, 219 Mont. at 9, 709 P.2d at 1010. Applying these rules, I disagree with the Court’s assertion that the statutory scheme created by the Legislature is “absurd.” Opinion ¶¶ 17, 19, 20. The scheme prohibits FWP employees from using their official authority or influence for the purpose of influencing the political actions of any person or body, except as authorized or required by statutes such as those the Court *14 found during its perusal of the Montana Code.
¶44 Rather than attempt to harmonize these statutes, the Court decides simply to insert the word “partisan” into the clear and unambiguous language of § 87-1-204, MCA. Opinion, ¶ 30. Such an approach flies directly in the face of our duty “simply to ascertain and declare what is in terms or in substance contained [in the statute], not to insert what has been omitted ....” Section 1-2-101, MCA. This rule of construction clearly instructs that this Court may not insert the word “partisan” into § 87-1-204, MCA. The fact that the statute may prohibit a wide range of activities-both partisan and nonpartisan-does not establish that the statute is “absurd.” Rather, it establishes that the Legislature intended the statute’s reach to be broad and include all such activities, except as otherwise provided in more specific statutes.
¶45 Notably, the Court fails to explain what conduct by an FWP employee would constitute “use [of] his official authority or influence ... for the purpose of coercing or influencing the [partisan] political actions of any person or body.” However, the Court’s suggestion that the legislative process is anything but partisan defies the reality of Montana’s Legislature. It is common knowledge that legislators generally vote along party lines in support of, or in opposition to, statutes drafted to implement the planks in the parties’ respective platforms. Similarly, the suggestion that lobbyists-of whatever ilk-do not play to this partisan polarization is specious. Consequently, even under the Court’s remanufactured version of § 87-1-204, MCA-which applies only to “partisan” political actions-the legislative activitiesengaged in by FWP and challenged in this case by MSSA are prohibited; and the District Court, therefore, erred in granting judgment in favor of FWP.
¶46 The Court offers one additional justification for its approach-namely, that § 87 1-204, MCA, “provides no clear or unambiguous meaning for the phrase ‘political actions.’ ” Opinion, ¶ 12. Yet, ambiguity presupposes that the language is susceptible to at least two reasonable but conflicting meanings. See Mary J. Baker Revoc. Trust v. Cenex Harvest, 2007 MT 159, ¶ 20, 338 Mont. 41, ¶ 20, 164 P.3d 851, ¶ 20; Missoula High School Legal Defense Ass'n v. Superintendent of Public Instruction, 196 Mont. 106, 108-12, 637 P.2d 1188, 1189-92 (1981). No such reasonable but conflicting meanings are demonstrated in the Court’s Opinion. Indeed, the Court does not even attempt to demonstrate that the term “political actions” is susceptible to more than one reasonable but conflicting meaning-possibly due to the fact that nothing about this term is ambiguous. For this reason, the *15 Court’s resort to other sources in order to define “political actions” is unnecessary.
¶47 In this regard, the Court relies on State ex rel. Nagle v. Sullivan, 98 Mont. 425, 40 P.2d 995 (1935) (per curiam), to explain the meaning of “political actions.” Opinion, ¶¶ 23-24, 29. However, Nagle did not involve the issue of whether lobbying and appearing before the Legislature was “political action” within the meaning of § 87-1-204, MCA. Rather, Nagle involved a quo warranto proceeding to determine which one of two appointed individuals was lawfully entitled to sit on the State Fish and Game Commission. See Nagle, 98 Mont. at 434-37, 40 P.2d at 996-97. The sole issue presented was whether the Governor had authority to remove Sullivan without notice and an opportunity to be heard in his defense. Nagle, 98 Mont. at 437, 40 P.2d at 997. Construing §§ 3651 and 3658, RCM (1921),[2] the Court stated simply that the intention of the Legislature was “to remove the Fish and Game Department from the control of the Governor and to create a commission entirely divorced from political activity, and of which there will be, at all times, a majority of experienced members-a continuing body removed from political control and manipulation.” Nagle, 98 Mont, at 443, 40 P.2d at 1000. The Court did not define what “political actions” means, much less conclude that this term did not encompass lobbying and appearing before the Legislature. Nagle is inapposite.
¶48 I do agree with the Court that § 87-1-204, MCA, is “unique.” Opinion, ¶ 21. The statute is also very clear in prohibiting FWP employees from using their official authority or influence for the purpose of “influencing the political actions of any person or body.” Accordingly, it is not necessary to resort to statutes dealing with general limitations governing the political activity of other agency employees or to cases dealing with federal or other states’ statutes. See Opinion, ¶¶ 21,25-28. As we stated in Small v. Board of Trustees, 2001 MT 181, 306 Mont. 199, 31 P.3d 358, “Montana’s teacher tenure statute is not ambiguous. Thus, appeal to policy arguments or decisions from other jurisdictions interpreting different tenure statutes to aid our interpretation of Montana’s tenure statute is unnecessary.” *16 Small, ¶ 22. Likewise, § 87-1-204, MCA, is not ambiguous. Thus, appeal to policy arguments and decisions from other jurisdictions interpreting different political-activity statutes to aid our interpretation of § 87-1-204, MCA, is unnecessary.
¶49 That said, in light of the Court’s reliance on decisions from other jurisdictions, I note that in Slate ex rel. Green v. City of Cleveland, 33 N.E.2d 35 (Ohio App. 1940), the court considered a prohibition similar to § 87-1-204, MCA. The prohibition stated: “No person in the service of the city shall use his official authority to influence or coerce the political action of any person or body ....” Green, 33 N.E.2d at 36. Asking itself, “What is the meaning of the words ‘political action’ in this sentence?” the court reasoned:
It seems clear to us that whenever a voter casts his ballot, such an action is “political action,” on his part, whether he votes on candidates or for or against some issue submitted on the ballot. Therefore,'if any city official should threaten with a loss of his job any employee refusing to vote for or against a special levy, bond issue or charter amendment, such a threat would constitute within the meaning of the above provision an attempt to use the official authority of such official “to influence or coerce the political action” of the employee so threatened.
Green, 33 N.E.2d at 37.
¶50 The Ohio court’s interpretation of “political action” is no less persuasive than the various interpretations offered by this Court in ¶¶ 25-28 of the Opinion. Green supports the proposition that whenever a legislator casts his or her vote with respect to some issue before the Legislature, such an action is a “political action,” and if any FWP employee uses his official authority or influence for the purpose of influencing that vote, then the employee is engaged in the conduct proscribed by § 87-1-204, MCA.
¶51 Does § 87-1-204, MCA, make sense? Probably not. Of necessity, the employees of Executive Branch agencies need to lobby and appear before the Legislature on budgetary and legislative issues affecting their operations and the public. No one is denying that. Rather, the point here is that amending or “fixing” § 87-1-204, MCA, is the Legislature’s job. It is not this Court’s province to interpret the statute in a way that allows what it specifically prohibits, in order to achieve a more palatable result.
¶52 In sum, lobbying the Legislature, appearing before it as a proponent or opponent of legislation, and otherwise influencing the decisions of individual legislators are included within the *17 unambiguous proscriptions of § 87-1-204, MCA. Accordingly, because the plain language of § 87-1-204, MCA, includes the activities of FWP that are challenged by MSSA in this appeal, we should stop there and reverse the District Court’s decision. We need not and should not judicially create an ambiguity where none exists so as to avoid what the statute clearly prohibits.
¶53 I dissent.

 This theory relied on by the Court in reaching its holding was not argued by FWP in its appellate briefs. Rather, it has been created by the Court from whole cloth.

 Section 87-1-204, MCA, derives from § 3658, RCM (1921), which provided as follows: “While retaining the right to vote as he may please, and to express his opinions on all political questions, no fish and game warden or deputy shall take any active part in political management or political campaigns, nor shall he use his official authority or influence for the purpose of interfering with an election, or affecting the results, thereof, or for the purpose of coercing or influencing the political actions of any person or body.”